[No. 42588. En Banc. April 19, 1973.]

PACIFIC NORTHWEST ANNUAL CONFERENCE OF THE UNITED METHODIST CHURCH, *Respondent*, v. WALLA WALLA COUNTY, *Appellant*.

*Arthur R. Eggers* and *Carl L. Johnson,* for appellant.

*Yancey Reser* (of *Sherwood, Tugman, Gose & Reser*), for respondent.

*Slade Gorton, Attorney General, Timothy R. Malone, Senior Assistant,* and *William D. Dexter, Assistant,* amici curiae.

BRACHTENBACH, J.—The major question raised herein is whether the Walla Walla residence owned by plaintiff, Pacific Northwest Annual Conference of the United Methodist Church, and occupied by the conference's ordained district superintendent, is a "parsonage" and thereby exempt from real property taxation under RCW 84.36.020.

Before amendment in 1971, the material part of RCW 84.36.020 read:

The following property shall be exempt from taxation:

. . .

All churches . . . together with a parsonage.

The 1971 amendment expanded the class of exempt property to include

All churches . . . together with a parsonage and convent.

Plaintiff conference sought a refund of real estate taxes paid under protest to defendant Walla Walla County in 1970 and 1971, and an injunction against further taxation so long as the residence is occupied by its district superintendent. Thus, the question presented is twofold: did the superintendent's residence fall within the definition of

"parsonage" as that term was employed in the preamendment version of RCW 84.36.020; and, if not, did the legislature so expand that definition by the addition of the words "and convent" in 1971 so as to include this residence?

The trial court denied the refund, but enjoined future taxation. We affirm the denial of the refund for the years 1970 and 1971 and reverse as to the injunction against future taxation. Thus we hold that the residence of the conference's district superintendent did not qualify as a "parsonage" and was not exempt from real estate taxes in 1970 and 1971; nor is it a "parsonage", and therefore exempt, for subsequent years under existing law.

■ Arguably, the word "parsonage" might include any clergyman's residence, as suggested in *Webster's Third New International Dictionary* (unabridged 1963). However, we are not at liberty to use a definition that is just arguably acceptable. Rather, it has been the well settled rule in this state for over 70 years that the court will find an exemption from taxation only where the legislature has authorized such by clear and explicit language; statutes exempting persons or property from taxation are to be strictly construed. *Thurston County v. Sisters of Charity of House of Providence,* 14 Wash. 264, 265, 44 P. 252 (1896). More recently, in *Pacific Northwest Conference of Free Methodist Church of North America v. Barlow,* 77 Wn.2d 487, 492, 463 P.2d 626 (1969), we noted the rationale underlying the rule that exemptions are not to be extended by judicial construction to property other than that which is expressly designated by law:

> It is widely recognized that tax exemptions create inequities in the distribution of the tax burden, even where the exempted property is being used for some function which it would be the duty of the state to perform if it were not performed by private individuals or organizations. This is so because rarely are the benefits of an exempted property conferred only upon those who must bear the increased tax burden.[1]

---

[1]Plaintiff conference, a division within the structure of the World Wide Methodist Church, encompasses the entire state of Washington

. . .

Not only does the granting of exemptions result in an unequal distribution of the tax burden, but it also reduces the amount of revenue available to the governing body through reduction of the tax base.

(Footnotes omitted.) Thus, the burden rests on one claiming exemption to show clearly that his property is within the exempting statute.

■ ■ To strictly construe a statute simply means that given a choice between a narrow, restrictive construction and a broad, more liberal interpretation, we must choose the first option. That principle is totally controlling in this case. The historical concept of a parsonage, both in the legal and factual sense, is a residence occupied by a minister who is the designated clergyman for a particular congregation and who holds regular services therefor.

As the Supreme Court of Massachusetts stated in *Worcester Dist. Stewards New England Conf. of Methodist Episcopal Church v. Assessors of Worcester*, 321 Mass. 482, 486, 73 N.E.2d 898 (1947):

> [T]he occupant of the property in question, although a minister and having supervisory powers of very many churches in the district of which he was superintendent, was not the incumbent as a minister of any of them. We are of opinion that the real estate involved was not a parsonage within the meaning of [the exempting statute].

*Accord, International Missions, Inc. v. Lincoln Park*, 87 N.J. Super. 170, 174, 208 A.2d 431 (1965); *Harmon v. North Pac. Union Conf. Ass'n of Seventh Day Adventists*, 462 P.2d 432 (Alas. 1969); *St. Matthew's Lutheran Church for the Deaf v. Division of Tax Appeals*, 18 N.J. Super. 552, 558, 87 A.2d 732 (1952).

When we consider the nature of the office of the plaintiff's district superintendent, the claim to exemption fails. The district superintendent has no identifiable congre-

and part of Idaho. The Walla Walla District is a subdivision which includes several southeastern Washington counties and part of Idaho.

gation. While he may preach in local churches, it is by invitation only and he has no specific church to which he is assigned. Rather, he ministers to the entire district and not directly to any specific congregation. Indeed, the district superintendent was characterized as a minister's minister, a pastor's pastor.

Plaintiff conference urges this court to base its interpretation of "parsonage" upon the character of the duties performed by the occupant of the residence in question. It contends that under its discipline the district superintendent performs ecclesiastical duties rather than administrative functions normally assigned to the secular connotation of a superintendent. Even acknowledging that the activities of this particular church official could be categorized as primarily ecclesiastical, that characterization is not decisive. Given the proposition that the key ingredient is a pastoral connection with an identifiable church or congregation, the nature of the other duties of the occupant of the residence must be viewed as nondeterminative.

No fair reading of the record can characterize the district superintendent as the minister in charge of a particular congregation or church in the traditional sense of a minister with whom the members of a congregation would associate themselves.

The statute itself indicates a legislative awareness of the narrow definition of parsonage for it provides that a qualifying parsonage need not be on land contiguous to the church property. RCW 84.36.020. Had the legislature intended to adopt the broad concept of "any clergyman's residence" it is apparent that this additional language would be unnecessary. Indeed, this slight statutory modification of the traditional definition of a parsonage buttresses our own conclusion.

Thus, the district superintendent's residence did not qualify as a "parsonage" for exemption purposes under the pre-1971 amendment version of RCW 84.36.020.

We now turn to the theory upon which the trial court held that after 1971 the district superintendent's residence

was exempt. The only relevant words added to the exempting statute in 1971 were "and convent." The trial court reasoned that the legislative act of adding exemption for a convent necessarily indicated a correlative legislative intent to broaden the meaning of "parsonage" beyond the traditional definition we have adopted herein. We disagree and hold that the legislative intent was to exempt convents (the interpretation of which is not before us) in addition to the narrow exemption for parsonages. We are unable to agree that the addition of another exempt category (i.e., convents) to the exemption statute necessarily expanded the definition of an exempt parsonage.

If the legislature had intended to make exempt the denomination owned residences of all ordained ministers engaged in administrative and supervisory activities over a number of churches it could have easily done so. For example, in New Jersey, tax exempt status has been granted to the "dwelling house . . . occupied . . . by a clergyman . . . who is a district superintendent of such religious association . . ." N.J. Stat. Ann. 54:4-3.35 (Supp. 1972). See International Missions, Inc. v. Lincoln Park, supra.

The conference finally contends that if the term "parsonage" is not interpreted to include the district superintendent's residence, RCW 84.36.020 violates Const. art. 7, § 1 (amendment 14), which provides in part that:

All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax and shall be levied and collected for public purposes only.

The conference suggests that the "class" here is all church-owned residences of ordained ministers or members of other religious orders; thus, because the legislature has attempted to divide this natural class into sub-classes—treating the members of each differently—the exemption violates Const. art. 7, § 1.

The power of the legislature to classify for purposes of taxation is indeed broad:

In the matter of classifying the subjects of taxation, the legislature has a very wide discretion. While all taxes upon persons in the same class should be equal and uniform, the question of what persons shall constitute the class is one primarily for the legislature to determine, and its determination cannot be interfered with by the courts unless clearly arbitrary and without any reasonable basis.

*Bates v. McLeod,* 11 Wn.2d 648, 654, 120 P.2d 472 (1941); *accord, Libby, McNeill & Libby v. Ivarson,* 19 Wn.2d 723, 730, 144 P.2d 258 (1943).

■ Implicit in the conference's argument is the assumption that the legislature could make no reasonable distinction between a minister who holds regular services for a particular congregation and a minister who performs the duties of district superintendent for the conference. We disagree. Such a distinction is not clearly arbitrary, and thus must be upheld. Likewise a convent is not so similar to the residence of the district superintendent that we can say there is no reasonable basis for distinguishing the two for taxation purposes.

We do agree with the trial court that this statute is hardly the model of clarity as to meaning and intent, but guided by the principle of strict construction we can reach no conclusion other than that the district superintendent's residence is not now, and has not been, exempt from the real estate taxes of Walla Walla County.

The judgment of the trial court is affirmed as to the payment of real estate taxes in 1970 and 1971, but is reversed with regard to taxes due in 1972 and thereafter.

HALE, C.J., FINLEY, ROSELLINI, HUNTER, HAMILTON, STAFFORD, WRIGHT, and UTTER, JJ., concur.