238 P.3d 1175 (2010)
In re the DETENTION OF Jake HAWKINS, Petitioner.
No. 82907-1.
Supreme Court of Washington, En Banc.
Argued May 6, 2010.
Decided September 9, 2010.
*1176 Jodi R. Backlund, Manek R. Mistry, Backlund & Mistry, Olympia, WA, for Petitioner.
Joshua Choate, Brooke Elizabeth Burbank, Office of the Washington State Attorney, Seattle, WA, for Respondent.
OWENS, J.
¶ 1 In 2006, the State of Washington filed a petition alleging that Jake Hawkins was a sexually violent predator (SVP). After the trial court found probable cause to believe that Hawkins was an SVP, but before a jury had been asked to determine the issue beyond a reasonable doubt, Hawkins was taken into custody by the Department of Social and Health Services (DSHS) "for an evaluation as to whether [he] is a sexually violent predator." RCW 71.09.040(4). As part of that evaluation, the State sought, and the trial court ordered, a polygraph examination of Hawkins about his sexual history. Hawkins argues that the trial court exceeded its statutory authority in ordering the polygraph examination. We agree and therefore reverse the Court of Appeals, vacate the trial court's order, and remand for further proceedings consistent with this opinion.

FACTS
¶ 2 In 1993, Hawkins was convicted of attempted rape in the second degree by forcible compulsion. While incarcerated, he successfully completed a 13-month sex offender treatment program. On February 21, 2006, the State submitted a petition alleging that Hawkins was an SVP based on the criteria set forth in RCW 71.09.020(18). At the February 23 hearing to determine whether probable cause existed to believe that Hawkins was an SVP, the State relied upon the testimony of, and a report by, Dr. Christopher North. Dr. North's report was based on his clinical interview with Hawkins in January 2005, as well as a review of records existing at that time. Dr. North's testimony at the probable cause hearing concerned additional documents related to Hawkins created since the 2005 report, especially those relating to Hawkins' participation in the sex offender treatment program. While noting that Hawkins "certainly did well in treatment," Dr. North testified that, "to a reasonable degree of scientific certainty," it was his opinion that Hawkins was likely to reoffend if not confined to a secure facility. Verbatim Report of Proceedings (VRP) at 8, 17-18. At the hearing, the trial court found probable cause to believe that Hawkins was an SVP.
¶ 3 After the finding of probable cause, Dr. North was assigned to conduct a new evaluation, pursuant to RCW 71.09.040(4), to determine whether Hawkins was an SVP. As part of that evaluation, Dr. North requested that Hawkins submit to a sexual history polygraph examination. Hawkins refused. The State sought, and the trial court granted, an order compelling Hawkins to submit to the polygraph examination. Hawkins appealed and, in an unpublished opinion, the Court of Appeals affirmed the trial court's order. In re Det. of Hawkins, noted at 148 Wash.App. 1038, 2009 WL 343153 (2009). We granted Hawkins' petition for review of the Court of Appeals decision. In re Det. of Hawkins, 166 Wash.2d 1019, 217 P.3d 335 (2009).

ISSUE
¶ 4 Does RCW 71.09.040(4) prohibit the State from compelling a person to undergo a *1177 sexual history polygraph examination as part of a pretrial evaluation?

ANALYSIS

A. Standard of Review
¶ 5 Statutory interpretation is a question of law reviewed de novo. In re Det. of Williams, 147 Wash.2d 476, 486, 55 P.3d 597 (2002).

B. RCW 71.09.040(4) Prohibits Compulsory Polygraph Examinations
¶ 6 Hawkins argues that, properly construed, RCW 71.09.040(4) prohibits the State from compelling respondents to SVP commitment proceedings to submit to polygraph examinations.[1] In advancing this argument, Hawkins emphasizes the unique status of polygraph examinations in the law, owing to their unreliability and invasiveness, and the fact that the legislature elsewhere specifically allows for compelled polygraph examinations. We agree and hold that RCW 71.09.040(4) prohibits the State from compelling respondents to SVP commitment proceedings to submit to polygraph examinations.
¶ 7 When interpreting a statute, a court's fundamental objective is to ascertain and carry out the legislature's intent. State v. Jacobs, 154 Wash.2d 596, 600, 115 P.3d 281 (2005). This involves giving effect to the plain meaning of the statute, if any, by taking into account the ordinary meaning of the words used as well as the context in which the statute appears, including related provisions. Id. If the statute is susceptible to two or more reasonable interpretations, it is ambiguous and we may turn to additional tools of statutory construction in determining the meaning of the statute. Christensen v. Ellsworth, 162 Wash.2d 365, 373, 173 P.3d 228 (2007). In addition, statutes that involve a deprivation of liberty must be strictly construed. In re Cross, 99 Wash.2d 373, 379, 662 P.2d 828 (1983). Strict construction requires that, "given a choice between a narrow, restrictive construction and a broad, more liberal interpretation, we must choose the first option." Pac. Nw. Annual Conference of United Methodist Church v. Walla Walla County, 82 Wash.2d 138, 141, 508 P.2d 1361 (1973). As civil commitment is a "massive curtailment of liberty," Humphrey v. Cady, 405 U.S. 504, 509, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972), we must narrowly construe the present statute.
¶ 8 The statute authorizing a pretrial evaluation of a respondent to SVP proceedings is RCW 71.09.040(4). That statute provides:
If the probable cause determination is made, the judge shall direct that the person be transferred to an appropriate facility for an evaluation as to whether the person is a sexually violent predator. The evaluation shall be conducted by a person deemed to be professionally qualified to conduct such an examination pursuant to rules developed by the department of social and health services. In adopting such rules, the department of social and health services shall consult with the department of health and the department of corrections. In no event shall the person be released from confinement prior to trial. A witness called by either party shall be permitted to testify by telephone.
RCW 71.09.040(4). We are called upon to determine what the legislature intended with respect to polygraph examinations when it authorized "an evaluation as to whether the person is a sexually violent predator." Id.
¶ 9 The legislature is undoubtedly aware of the unique difficulties posed by polygraph examinations. We presume that the legislature is aware of long-standing legal principles. See M.W. v. Dep't of Soc. & Health Servs., 149 Wash.2d 589, 596-97, 70 P.3d 954 (2003). This is particularly true in the case of polygraph examinations, which the courts have consistently recognized as unreliable and, unless stipulated to by all parties, inadmissible. See, e.g., In re Disciplinary *1178 Proceeding Against Kronenberg, 155 Wash.2d 184, 194-95, 117 P.3d 1134 (2005); State v. Thomas, 150 Wash.2d 821, 860, 83 P.3d 970 (2004); State v. Renfro, 96 Wash.2d 902, 905, 639 P.2d 737 (1982); State v. Sutherland, 94 Wash.2d 527, 529, 617 P.2d 1010 (1980). The very test that courts in this state use to determine the admissibility of new scientific evidence, the Frye test, see, e.g., State v. Gregory, 158 Wash.2d 759, 829, 147 P.3d 1201 (2006), comes from Frye v. United States, 54 App. D.C. 46, 293 F. 1013 (1923), a case which held that testimony about a polygraph examination was inadmissible. This is the backdrop against which the legislature drafts its laws.
¶ 10 In addition to issues of unreliability and inadmissibility, polygraph examinations are also invasive, both physically and of one's private affairs. We have previously subjected to constitutional scrutiny a requirement that applicants for state employment submit to a polygraph examination, noting that persons had a "constitutionally protected privacy interest" in the information to be disclosed. O'Hartigan v. Dep't of Pers., 118 Wash.2d 111, 116, 821 P.2d 44 (1991). Though that case permitted the polygraph examination after a constitutional analysis, it nonetheless stands for the proposition that polygraph examinations implicate privacy concerns. We further note that the present polygraph examination is more troubling than the one at issue in O'Hartigan as it is truly compulsory: Mr. Hawkins does not have the luxury of avoiding the polygraph examination by pursuing an alternative line of work. Moreover, the inquiry is into his sexual history, one of the most private affairs of a person. The point, as the legislature is surely aware, is that polygraph examinations are intrusive and implicate constitutional concerns.
¶ 11 Because the legislature is undoubtedly aware of the inherent problems with polygraph examinations, it is fair to infer that the legislature intends to prohibit compulsory polygraph examinations unless it expressly allows for their use. This view is confirmed by RCW 71.09.096(4), which expressly permits compulsory polygraph examinations in a list of conditions that may be imposed upon an SVP released to a less restrictive alternative. Unlike RCW 71.09.096(4), RCW 71.09.040(4) does not expressly authorize a compulsory polygraph examination. This distinction has intuitive appeal: those subject to RCW 71.09.096(4) are persons who have been found, beyond a reasonable doubt, to be SVPs while those subject to RCW 71.09.040(4) have not. The legislature may well find this to be sufficient reason to treat the two classes differently. At a minimum, the express allowance of polygraph examinations in RCW 71.09.096(4) demonstrates that when the legislature desires to permit a compelled polygraph examination it knows how to do so. Our conclusion, particularly given our duty to strictly construe the statute, is that because the legislature declined to specifically permit compelled polygraph examinations in RCW 71.09.040(4), the statute prohibits such examinations. This conclusion, as the foregoing analysis makes clear, applies only to polygraph examinations; the failure of the statute to enumerate other methods of conducting an examination does not necessarily preclude their use.
¶ 12 The dissent attempts to reframe the issue in this case, focusing on whether RCW 71.09.040(4) authorizes DSHS to develop rules for conducting a pretrial evaluation. Even assuming, as the dissent concludes, that the statute permits DSHS to create rules relating to the conduct of pretrial SVP evaluations, DSHS cannot create rules that contradict the statute. Having concluded that RCW 71.09.040(4) prohibits polygraph examinations, it is irrelevant whether the statute also permits DSHS to create other rules pertaining to the conduct of such evaluations.
¶ 13 Finally, we note that our holding does not unduly impair the ability of evaluators to assess whether an individual is an SVP. Evaluators may still request that respondents to SVP commitment proceedings undergo such an assessment and many persons may well choose to do so. Many respondents will have undergone polygraph examinations while incarcerated, whether as part of a voluntary sex offender treatment *1179 program or for other reasons. Nothing in RCW 71.09.040(4) prohibits evaluators from considering existing polygraph examinations as part of their evaluations, nor does that statute prohibit voluntary polygraph examinations. Even where a respondent refuses to participate and no existing polygraph examination results are available, however, an expert is still capable of reaching an opinion as to whether the respondent is an SVP. In this case, Dr. North testified at the probable cause hearing that, "to a reasonable degree of scientific certainty," Hawkins was likely to reoffend. VRP at 17-18. Dr. North reached this conclusion without the use or review of a polygraph examination. We are satisfied that professional evaluators will be able to reach conclusions without the use of such evidence.

CONCLUSION
¶ 14 RCW 71.09.040(4) prohibits the State from compelling respondents to SVP commitment proceedings to submit to polygraph examinations. The legislature knows how to permit such evaluations, but, aware of the concerns about the reliability of the results and intrusiveness upon privacy interests, declined to do so. As a result, we reverse the Court of Appeals, vacate the trial court's order compelling Hawkins to submit to a polygraph examination, and remand for further proceedings consistent with this opinion.
WE CONCUR: CHARLES W. JOHNSON, GERRY L. ALEXANDER, RICHARD B. SANDERS, TOM CHAMBERS, and JAMES M. JOHNSON, Justices.
STEPHENS, J. (dissenting).
¶ 15 I agree with the majority that polygraphs, especially sexual history polygraphs, are invasive, unreliable tools that are disfavored in our legal system. I therefore appreciate the majority's attempt to limit the use of polygraphs not explicitly authorized under the sexually violent predator (SVP) law, chapter 71.09 RCW. As a matter of statutory interpretation, however, I cannot agree. The touchstone of statutory interpretation is legislative intent. In its effort to strictly construe the SVP statute, the majority has subverted the legislature's intent that the Department of Social and Health Services (DSHS) should determine how best to evaluate SVPs. So long as the legislature does not exceed its constitutional bounds, we must respect its intent.

ANALYSIS

1. The SVP law grants DSHS authority to regulate pretrial evaluations.
¶ 16 At issue is whether RCW 71.09.040(4) authorizes one of the State's evaluators to use polygraph testing as part of the pretrial evaluation of an alleged SVP. RCW 71.09.040(1)-(3) provide for a hearing to establish that there is probable cause to believe that a person is an SVP. A positive finding sets off a process that culminates in a jury trial to determine whether the person is in fact an SVP. See RCW 71.09.050-.060. After a judge determines that there is probable cause, RCW 71.09.040(4) begins this process. It reads:
If the probable cause determination is made, the judge shall direct that the person be transferred to an appropriate facility for an evaluation as to whether the person is a sexually violent predator. The evaluation shall be conducted by a person deemed to be professionally qualified to conduct such an examination pursuant to rules developed by the department of social and health services. In adopting such rules, the department of social and health services shall consult with the department of health and the department of corrections. In no event shall the person be released from confinement prior to trial. A witness called by either party shall be permitted to testify by telephone.
RCW 71.09.040(4).
¶ 17 The key sentence for this case reads: "The evaluation shall be conducted by a person deemed to be professionally qualified to conduct such an examination pursuant to rules developed by the department of social and health services." Id. The dispute is over whether the phrase "pursuant to rules developed by the department of social and health services" modifies "conducted" or *1180 whether it modifies "deemed." The distinction is important because if the "pursuant" clause modifies "conducted," then DSHS may prescribe rules for how the evaluations are to be conducted, perhaps including whether polygraph examinations may be employed. If the "pursuant" clause modifies "deemed," however, then DSHS may only prescribe the qualifications for evaluators, not the means by which the evaluations are to be conducted.
¶ 18 RCW 71.09.040(4) is ambiguous because it is unclear at what point, if any, the verbal phrase beginning with "deemed" ends and the reader is supposed to revert to the main sentence describing how evaluations are conducted. To illustrate the point, compare the statutory sentence with this one: "The evaluation shall be conducted by Dr. Freud pursuant to rules developed by the department of social and health services." In this sentence, "by Dr. Freud" is a prepositional phrase complete in itself and the "pursuant" clause modifies "conducted"; this is clear because it would be ungrammatical to have "by Dr. Freud" modified by the "pursuant" clause. But in RCW 71.09.040(4), the description of the examiner, "by a person deemed to be professionally qualified to conduct such an examination," can be modified by the "pursuant" clause because one can deem someone qualified pursuant to certain rules. The result is that the reader cannot tell whether the "pursuant" clause is part of the description of the examiner, or whether the description of the examiner has concluded and the "pursuant" clause modifies "conducted" as it did in the Dr. Freud sentence.
¶ 19 When a statute is ambiguous, we construe it in a manner that fulfills the legislature's intent. City of Seattle v. St. John, 166 Wash.2d 941, 946, 215 P.3d 194 (2009). One means of doing so is to read the ambiguous portion in light of the rest of the provision and in the context of the statutory scheme. See State v. Engel, 166 Wash.2d 572, 578, 210 P.3d 1007 (2009). Doing so in this case, there are three reasons to conclude that the legislature intended to grant DSHS authority to prescribe rules for how an evaluation of an alleged SVP is to be conducted, not merely the qualifications an evaluator must possess.
¶ 20 First, the term "evaluation" is not defined in the SVP law. See RCW 71.09.020. Its ordinary meaning is a "judgment, appraisal, rating, [or] interpretation." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 786 (2002). The "evaluation as to whether the person is a sexually violent predator" called for by RCW 71.09.040(4) therefore asks for the evaluator's judgment on the matter without indicating how the judgment is to be formed, although the evaluator must be "deemed ... qualified." RCW 71.09.040(4). If, as the majority suggests, DSHS cannot prescribe rules for the evaluation, then it seems from the statute that a qualified evaluator has carte blanche to choose his or her method. Because it provides no information whatsoever about what the evaluation may entail, the statute does not bar any method of making the judgment, even flipping a coin.[1] It is absurd to think that the legislature intended to give individual evaluators such unfettered discretion. Instead, it makes sense to interpret the provision as granting DSHS the power to regulate how evaluations must be conducted.
¶ 21 Second, this interpretation explains why, when rulemaking, DSHS must "consult with the department of health and the department of corrections." RCW 71.09.040(4). If DSHS were empowered to prescribe only the qualifications necessary for evaluators, it would make sense to require DSHS to consult with the Department of Health (which has experience with medical qualifications) but not with the Department of Corrections (DOC) (which does not). The fact that DSHS must consult with DOC indicates that DSHS is to know what is feasible for the evaluation and treatment of sex offenders, which is one of DOC's areas of expertise. This again is consistent with a grant of authority to DSHS over how evaluations are conducted.
*1181 ¶ 22 Third, DSHS is afforded similar regulatory power elsewhere in the SVP law. RCW 71.09.800 grants the DSHS secretary broad authority to make rules to carry out the SVP law's operation. Specifically, DSHS is empowered to make rules for the evaluation and treatment of SVPs who are conditionally released to a less restrictive alternative to the Special Commitment Center (SCC). RCW 71.09.350(1). What's more, DSHS is responsible for the costs of evaluation and treatment for all committed individuals, regardless of their placement in the SCC or a less restrictive alternative, and is required to adopt rules to contain these costs. See RCW 71.09.110. It would be nonsensical to require DSHS to pay for evaluations for all SVPs and to adopt rules designed to lower the associated costs without giving DSHS the authority to adopt rules for how the evaluations may proceed, which principally affects their cost.
¶ 23 Thus, the appropriate interpretation of RCW 71.09.040(4) is one that grants DSHS the authority to prescribe rules governing evaluations of alleged SVPs, just as DSHS prescribes rules for the evaluation and treatment of SVPs confined in the SCC and those released to less restrictive alternatives. The question becomes one concerning the scope of this authority.
¶ 24 Reading RCW 71.09.040(4), there is nothing that purports to limit DSHS's authority to prescribe what tools or methods are appropriate during an evaluation. As noted above, "evaluation" is not defined. No methods are mentioned other than the calling of witnesses. A strict construction of RCW 71.09.040(4), as argued for by the majority, would limit "evaluation" solely to this method. But no one seriously believes that the legislature intended to exclude all other evaluative techniques: even Hawkins admits that a medical examination also fits within the provision. At best, we are left with an undefined test and the idea that DSHS may prescribe rules governing it, on the condition that any witnesses called should be allowed to testify by telephone.
¶ 25 At this point, the majority steps in with a new canon of construction tailored solely to the polygraph. If the legislature does not specifically enumerate the polygraph as a permissible testing tool, the majority concludes, polygraph examinations are not permitted. This canon is based on the invasiveness and unreliability of polygraph testing, recognized elsewhere in the law. As evidence that the legislature considered the polygraph but chose to omit it from RCW 71.09.040(4), the majority points to RCW 71.09.096(4), which enumerates a polygraph examination as one possible condition that can be imposed when an SVP is released to a less restrictive alternative:
Prior to authorizing any release to a less restrictive alternative, ... [t]he court shall order the department of corrections to investigate the less restrictive alternative and recommend any additional conditions to the court. These conditions shall include, but are not limited to the following: Specification of residence, prohibition of contact with potential or past victims, prohibition of alcohol and other drug use, participation in a specific course of inpatient or outpatient treatment that may include monitoring by the use of polygraph and plethysmograph, monitoring through the use of global positioning satellite technology, supervision by a department of corrections community corrections officer, a requirement that the person remain within the state unless the person receives prior authorization by the court, and any other conditions that the court determines are in the best interest of the person or others.
RCW 71.09.096(4). The presence of the polygraph in the later provision, the argument goes, means that the polygraph is impermissible under the earlier provision in which it is not referenced.
¶ 26 This argument is misguided. For one thing, RCW 71.09.096(4) enumerates several types of conditions. The majority's reasoning suggests that anything enumerated in this provision (and perhaps anything similar that is implicitly included in its nonexclusive list) should be impermissible under RCW 71.09.040(4), in which it is not enumerated. The majority circumvents this consequence of its argument by insisting that the polygraph is disfavored, and that a different rule of statutory interpretation applies to it than *1182 to all other methods of evaluation. This approach ceases to search for legislative intent and instead applies a general dislike of polygraphs as the rule of decision.
¶ 27 The majority's reasoning sidesteps the statutory scheme. RCW 71.09.096(4) discusses conditions for which DSHS retains the authority to impose once an SVP is released to a less restrictive alternative. DSHS may prescribe rules for the evaluation and treatment of these conditionally released SVPs under RCW 71.09.350(1). If DSHS may permit polygraphs when prescribing rules for evaluating SVPs released to a less restrictive alternative, it would seem at a minimum that DSHS has equal authority to permit polygraphs in the evaluations of SVPs in the SCC. And, despite the majority's "intuitive" distinction between those who have been adjudicated SVPs after trial and those who await trial after the probable cause hearing, RCW 71.09.040(4) makes no such distinction.[2] It authorizes only an undefined "evaluation" and leaves it to DSHS to determine what the evaluation entails.
¶ 28 Reading the SVP law as a whole, it is clear that the legislature wished to delegate the definition of "evaluation" and the permissible evaluative techniques to DSHS. Although we must strictly construe the SVP statute, it makes no sense to interpret the undefined term "evaluation" in RCW 71.09.040(4) differently.[3]

2. DSHS regulations authorize a polygraph as part of the pretrial evaluation.
¶ 29 Contrary to the majority's view, DSHS's regulations allow a clinician to use a polygraph when evaluating an SVP. WAC 388-880-010 defines "evaluation" as "an examination, report, or recommendation by a professionally qualified person to determine if a person has a personality disorder and/or mental abnormality which renders the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." WAC 388-880-030(2) provides that the evaluation must be conducted pursuant to WAC 388-880-033, which sets forth the qualifications for evaluators, and "must be in the form required by and filed in accordance with" WAC 388-880-034 and -036. WAC 388-880-030(2). WAC 388-880-034 to 036 therefore govern the evaluation. In relevant part, these regulations read:
WAC 388-880-034 EvaluatorPretrial evaluation responsibilities. The evaluation done in accordance with WAC 388-880-030(1) in preparation for a trial or hearing must be based on the following:
(1) Examination of the resident, including a forensic interview and a medical examination, if necessary;
(2) Review of the following records, tests or reports relating to the person:
....
(d) Psychological and psychiatric testing, diagnosis and treatment, and other clinical examinations ...;
(e) Medical and physiological testing, including plethysmography and polygraphy;

*1183 WAC 388-880-035 Refusal to participate in pretrial evaluation. If the person refuses to participate in examinations, forensic interviews, psychological testing or any other interviews necessary to conduct the initial evaluation under WAC 388-880-030(1), the evaluator must notify the SCC. The SCC will notify the prosecuting agency for potential court enforcement.
WAC 388-880-036 Pretrial evaluationReporting. (1) The evaluation must be in the form of a declaration or certification... and must be prepared by a professionally qualified person.
(2) The report of the evaluation must include:
(a) A description of the nature of the examination;
(b) A diagnosis of the mental condition of the person;
(c) A determination of whether the person suffers from a mental abnormality or personality disorder;
(d) An opinion as to whether the person meets the definition of a sexually violent predator.
¶ 30 At first blush, WAC 388-880-034 seems to preclude polygraph testing during the pretrial evaluation. WAC 388-880-034(1) requires the evaluator to examine the person, "including a forensic interview and a medical examination, if necessary," but does not mention polygraphs. In contrast, WAC 388-880-034(2)(d) and (e) mention several types of records the evaluator must consider, including records from psychological testing and medical testing such as the polygraph or plethysmography. Because the polygraph is specifically mentioned in the second, records-review subsection but not in the first, examination subsection, there is an argument that the evaluator may conduct only a medical examination or forensic interview, not a polygraph.
¶ 31 But, WAC 388-880-034 cannot be read to limit the evaluation solely to a medical examination and forensic interview because the next regulation presupposes that the evaluation is broader than that: "If the person refuses to participate in examinations, forensic interviews, psychological testing or any other interviews necessary to conduct the initial evaluation under WAC 388-880-030(1), the evaluator must notify the SCC." WAC 388-880-035 (emphasis added). First, the term "examinations" and "forensic interviews" are plural, suggesting that an evaluation may require more than one of each. Second, "psychological testing" and "other interviews" do not appear in WAC 388-880-034(1) at all. Crucially, psychological testing appears in the records-review section, WAC 388-880-034(2), and yet is considered part of the "evaluation" in WAC 388-880-035. Thus, it cannot be true that methods that appear only in WAC 388-880-034(2) are necessarily excluded from the "evaluation." Instead, the evaluator has discretion to perform psychological testing or other interviews in addition to medical examinations or forensic interviews when performing his initial evaluation.[4]
¶ 32 The terms "medical examination," "forensic interview," and "other interview" are not defined in either the SVP statute or this portion of the WACs. WAC 388-880-034(2)(e) designates polygraph records as a form of medical or physiological testing relevant to the pretrial evaluation. Essentially, a polygraph is an interview in which the subject is asked to answer questions while physiological data are recorded. So, a polygraph fits within the term "medical examination" as a form of medical testing, within "forensic interview" as a form of interview undertaken in anticipation of trial, or within "other interview" if it is conceived of as a diagnostic interview.
¶ 33 In sum, DSHS's regulations afford the evaluator some discretion to conduct tests beyond a mere physical examination when evaluating an alleged SVP. Because a polygraph fits within the terms of other permissible *1184 evaluation techniques, and because the regulations clearly contemplate that polygraph records can be reviewed during a pretrial evaluation, see WAC 388-880-034(2)(e), I would conclude that the evaluator may use a polygraph during the pretrial evaluation. The trial court did not exceed its authority or abuse its discretion in directing Hawkins to comply with the evaluator's authorized request.[5]

CONCLUSION
¶ 34 Although the polygraph has been recognized as invasive and unreliable, this court's objections to the practice cannot trump legislative intent when our sole task is to interpret an admittedly constitutional statutory scheme. The legislature intended to leave the details of pretrial SVP evaluations, like the details of posttrial SVP evaluations and treatment, to DSHS. DSHS regulations afford evaluators some discretion to choose methods of evaluation. A polygraph fits within the ambit of the permissible methods of evaluation, and DSHS clearly contemplates that evaluators may review polygraph records during the pretrial evaluation. Therefore, conducting a polygraph test during the pretrial evaluation is within the evaluator's discretion. I would hold that the trial court did not exceed its authority or abuse its discretion in ordering Hawkins to comply with the evaluator's authorized request. I respectfully dissent.
WE CONCUR: BARBARA A. MADSEN, Chief Justice, and MARY E. FAIRHURST, Justice.
NOTES
[1] The Court of Appeals mistakenly identified CR 26(a) as an alternative source of authority for the trial court's order. Because CR 26(a) is merely a preview of the following rules, its reference to "mental examinations" is actually a reference to CR 35. In Williams, 147 Wash.2d at 491, 55 P.3d 597, we held that CR 35 was inconsistent with chapter 71.09 RCW. It follows that neither CR 35 nor CR 26(a) authorize mental examinations in SVP commitment proceedings.
[1] Hawkins argues that no definition is necessary because "evaluation" refers only to a medical examination, but this interpretation is at odds with the plain meaning of the word, which is broader. Furthermore, RCW 71.09.040(4) explicitly contemplates more than a physical examination, as it provides for the calling of witnesses as part of the evaluation. See RCW 71.09.040(4). ("A witness called by either party shall be permitted to testify by telephone.").
[2] It may seem troubling that the statute subjects an alleged SVP, upon a showing of probable cause, to an evaluation as though he or she were already adjudicated an SVP. But this court has consistently upheld the SVP scheme as constitutional, including the pretrial evaluation and the delegation of power to DSHS. See In re Pers. Restraint of Young, 122 Wash.2d 1, 857 P.2d 989 (1993) (upholding the recently enacted SVP law, which contained a provision identical to current RCW 71.09.040(4)); see also id. at 43, 857 P.2d 989 (describing how 72 hours of evaluation and treatment occurs under the involuntary commitment act, chapter 71.05 RCW, before the probable cause hearing).
[3] Hawkins contends that we must construe the SVP law to preclude compulsory pretrial polygraphs in order to avoid the question of whether the statute is unconstitutional if it permits them. But, the majority's approach goes beyond construing a statute to avoid constitutional infirmity; it abandons the statutory scheme entirely. At any rate, Hawkins did not raise his constitutional arguments below except to claim that provisions affecting fundamental rights must be strictly construed. He did not discuss substantive due process or article I, section 7 in any detail. Even his petition for review omits his constitutional arguments. Consequently, we lack an adequate record on which to decide whether compulsory pretrial polygraphs are necessary to serve the State's compelling interest in detaining and treating SVPs. I decline to fundamentally alter the statutory scheme to avoid Hawkins' ill-defined constitutional arguments.
[4] The fact that an evaluator will not necessarily use the same methods to evaluate every alleged SVP is the reason why the evaluator's report must contain a "description of the nature of the examination" as a prelude to the evaluator's conclusions. WAC 388-880-036(2)(a). This description would be largely unnecessary if the evaluator were limited to a physical examination and interview. Because the WACs do not exhaustively define the evaluation in that manner, however, the description is necessary to understand the evaluator's recommendation.
[5] Finally, Hawkins argues that DSHS's regulations exceed its statutory authority and are unconstitutional. However, he failed to join the appropriate agency as a party, which is a prerequisite to obtaining a ruling that strikes down these regulations. See RCW 34.05.570(2)(a); City of Bremerton v. Spears, 134 Wash.2d 141, 164, 949 P.2d 347 (1998). Furthermore, he did not raise his constitutional arguments below or in his petition for review. See supra note 3. I therefore decline to entertain Hawkins' challenges to the regulations.