IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Detention of<br><br>RANDY RYAN ROSS. | No. 85652-9-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

DíAZ, J. — The State twice charged Ross with a sexually violent offense. Each time, the court found Ross incompetent and dismissed the charges. Following the dismissal of the second charged offense, the State filed a sexually violent predator (SVP) petition. Ross moved the court to empanel a jury to make the required preliminary determination whether he committed that crime, which motion the court denied. Ross sought, and this court granted, discretionary review. We hold that neither RCW 71.09.060(2) nor due process requires a jury, in this preliminary stage of an SVP proceeding, to determine whether Ross committed the predicate act(s). Thus, we affirm the denial of Ross' motion, and remand this matter to proceed consistent with this opinion.

I.    BACKGROUND

In 2015, the State charged Ross with two counts of child molestation in the first degree and rape of a child in the second degree. In 2016, the trial court found

Ross not competent to stand trial and his competency non-restorable. The court dismissed the charges without prejudice and committed Ross to Western State Hospital.

In a completely separate incident seven years later, in 2022, the State charged Ross with one count of attempted child molestation in the first degree. In 2023, the trial court dismissed the charges against Ross, finding him still unable to assist in his defense and thus incompetent. The same day, the State filed a petition to commit Ross as an SVP per chapter 71.09 RCW. The State stipulated it would bring its petition under only the 2022 charge.

Ross moved the court for an order empaneling a jury to make the preliminary determination required by the statute that he committed the 2022 charge. The trial court denied the motion, finding chapter 71.09 RCW envisions the court and not a jury making that determination. Ross then petitioned for discretionary review, which a commissioner of this court granted.

## II.    ANALYSIS

A.    Whether RCW 71.09.060(2) Requires a Jury to Determine Whether the Respondent Committed the Charged Act(s)

1. Overview of Sexually Violent Predator Proceedings

"The legislature has established a civil involuntary commitment system for individuals who are found to be an SVP." In re Det. of Reyes, 184 Wn.2d 340, 343, 358 P.3d 394 (2015). "The statute defines a 'sexually violent predator' as a 'person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a

2

secure facility.'" Id. (quoting RCW 71.09.020(18)).

There are several classes of persons who are subject to the SVP petition process. RCW 71.09.030(1). Relevant here is the class of persons "who has been charged with a sexually violent offense and who has been determined to be incompetent to stand trial [, and] is about to be released, or has been released, pursuant to RCW 10.77.086(7)." RCW 71.09.030(1)(c).

The charges brought by the State in Ross' 2015 and 2022 cases qualify as sexually violent offenses under RCW 71.09.020(18). And, thus, Ross falls within the class of persons who could be committed under RCW 71.09.030(1)(c).

RCW 71.09.060 lays out a three-step procedure for a court to undertake when presented with an SVP petition under RCW 71.09.030(1)(c).

First, under RCW 71.09.060(2), the court holds a preliminary hearing, at which:

> *the court* shall first hear evidence and determine whether the person did commit the act or acts charged if the court did not enter a finding prior to dismissal under RCW 10.77.086(7).

RCW 71.09.060(2) (emphasis added).

In such a "*hearing*," "the rules of evidence applicable in criminal cases shall apply, and all constitutional rights available to defendants *at criminal trials*, other than the right not to be tried while incompetent, shall apply." Id. (emphasis added). "If, after the conclusion of the hearing on this issue, the court finds, beyond a reasonable doubt, that the person did commit the act or acts charged, it shall enter a final order [with specific findings to be discussed later], appealable by the person, on that issue, and may proceed to consider whether the person should be

committed pursuant to this section." Id.

Second, if the person "did commit" the acts charged as determined in the hearing above, RCW 71.09.060(1) then permits "*a court or a jury*" to determine whether, beyond a reasonable doubt, an individual meets the statutory definition of an SVP; someone who "would be likely to engage in predatory acts of sexual violence if not confined in a secure facility" because of a mental health disorder. RCW 71.09.060(1) (emphasis added). The statute implicitly refers to this second determination as a "trial." Id.

Third and finally, "[i]f the court or jury determines that the person is a sexually violent predator, the person shall be committed to the custody of the department of social and health services for placement in a secure facility operated by the department of social and health services for control, care, and treatment," unless a less restrictive option is in the best interest of the person and community safety. Id.

2. Principles of Statutory Interpretation

When reviewing a statute, "[w]e begin with the statute's plain language. 'If the plain language is subject to only one interpretation, our inquiry ends because plain language does not require construction.'" Matter of C.A.S., 25 Wn. App. 2d 21, 26, 522 P.3d 75 (2022) (quoting HomeStreet, Inc. v. Dep't of Revenue, 166 Wn.2d 444, 451, 210 P.3d 297 (2009)). "A statute is ambiguous if 'susceptible to two or more reasonable interpretations,' but 'a statute is not ambiguous merely because different interpretations are conceivable.'" HomeStreet, 166 Wn.2d at 452 (quoting State v. Hahn, 83 Wn. App. 825, 831, 924 P.2d 392 (1996)).

4

Our goal in reviewing statutory language is "'to ascertain and carry out the intent of the Legislature.'" In re Det. of Anderson, 185 Wn.2d 79, 85, 368 P.3d 162 (2016) (quoting In re Det. of Martin, 163 Wn.2d 501, 506, 182 P.3d 951 (2008)). We discern the meaning "of a statutory provision . . . 'from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question.'" Id. at 87 (quoting Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 11, 43 P.3d 4 (2002)).

Taking these principles together, "it is settled that the plain meaning of a statute is determined by looking not only 'to the text of the statutory provision in question,' but also to 'the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.'" State v. Hurst, 173 Wn.2d 597, 604, 269 P.3d 1023 (2012) (quoting State v. Ervin, 169 Wn.2d 815, 820, 239 P.3d 354 (2010)).

"Another well-settled principle of statutory construction is that 'each word of a statute is to be accorded meaning.'" State v. Roggenkamp, 153 Wn.2d 614, 624, 106 P.3d 196 (2005) (quoting State ex rel. Schillberg v. Barnett, 79 Wn.2d 578, 584, 488 P.2d 255 (1971)). "'[T]he drafters of legislation . . . are presumed to have used no superfluous words and we must accord meaning, if possible, to every word in a statute.'" Id. (alteration in original) (quoting State v. J.P., 149 Wn.2d 444, 450, 69 P.3d 318 (2003)).

In examining such laws, we must keep in mind that "statutes that involve a deprivation of liberty must be strictly construed." In re Det. of Hawkins, 169 Wn.2d 796, 801, 238 P.3d 1175 (2010). "Strict construction requires that, 'given a choice

between a narrow, restrictive construction and a broad, more liberal interpretation, we must choose the first option.'" Id. (quoting Pac. Nw. Annual Conference of United Methodist Church v. Walla Walla County, 82 Wn.2d 138, 141, 508 P.2d 1361 (1973)).

Finally, we review such questions of statutory interpretation de novo. Echo Global Logistics, Inc. v. Dep't of Revenue, 22 Wn. App. 2d 942, 946, 514 P.3d 704 (2022).

3. Discussion

Ross argues that strict construction of RCW 71.09.060 "guarantees" Ross a trial by jury at the preliminary stage of SVP proceedings. Specifically, he avers that, because the proceeding described in RCW 71.09.060(2) mandates that "all constitutional rights available to defendants at criminal trials . . . shall apply," he is entitled to a jury determining that issue in the same way any criminal defendant is entitled to a jury trial under the Sixth Amendment. Ross claims the court and State's interpretation of the statute, which permits a judge alone to make that determination, effectively adds the word "bench" to the requirement that "*all* constitutional rights available to defendants at criminal trials" applies to these proceedings. (Emphasis added). We disagree for three overarching but interrelated reasons.

First, RCW 71.09.060 does not define the term "court." RCW 71.09.060. "When a statutory term is undefined, the court may look to a dictionary for its ordinary meaning." In re Estate of Blessing, 174 Wn.2d 228, 231, 273 P.3d 975 (2012). Merriam-Webster defines "court" as "a judge or judges in session."

Merriam-Webster Online Dictionary (last visited April 10, 2024), https://www.merriam-webster.com/dictionary/court). Thus, as a matter of plain language, the legislature meant "judge" when it used the word "court."

In response, Ross argues that "the common meaning of 'court' includes both judge and jury." In support, Ross offers a panoply of sources of definitions for the meaning of "court," including:

- an internet browser search engine, which defines "court" as a "tribunal presided over by a judge, judges, or a magistrate";

- Encyclopedia Britannica, which defines "court" as a "body of persons having judicial authority to hear and resolve disputes"; and

- Black's Law Dictionary, which defines, not "court" but, "trier of fact" as "either a judge or a jury."

We decline to rely on these sources, first, because we "may consider the plain and ordinary meaning of [a] term in a *standard dictionary*." State v. Fuentes, 183 Wn.2d 149, 160, 352 P.3d 152 (2015) (emphasis added). Addressing each in turn, it is patently obvious that an internet browser search engine and an encyclopedia are not standard dictionaries. Further, the Encyclopedia Britannica citation is to an article about the functions of courts rather than the meaning of the term "court" itself. Brian P. Smentkowski, James L. Gibson & Delmar Karlen, *Court*, Britannica (Apr. 17, 2024), https://www.britannica.com/topic/court-law [https://perma.cc/J9NX-SKSL]. Moreover, both of these first two definitions do not mention a "jury" at all and, thus, do not support Ross' claim that a "court" could mean a jury. Finally, while Black's Law Dictionary may be a standard dictionary, Ross provided the definition of a "trier of fact" instead of the definition of "court." In short, none of these sources offered by Ross support his proposed definition of

7

"court" or disturb our reliance on Merriam-Webster.

Ross further argues that, even if we assume "court" means only a judge, the specific language of RCW 71.09.060(1) ensuring "all [criminal] constitutional [] [trial] rights" controls over the more general word "court." However, only if a statute is ambiguous do courts "resort[] to [such] principles of statutory construction . . ." Taylor v. Burlington N.R.R. Holdings, Inc., 193 Wn.2d 611, 617, 444 P.3d 606 (2019). Here the dictionary definition of the term "court" as "judge or judges in session" obviates the need to avail ourselves of this principle.

As to our second overarching reason, we must read the two sections of RCW 71.09.060 in relation to each other to understand the "context" of the provisions in question. Hurst, 173 Wn.2d at 604 (quoting Ervin, 169 Wn.2d at 820). When we do so, it becomes clear that sections (1) and (2) of RCW 71.09.060 expressly distinguish when a task is the role of the "court" or the role of the "court or the jury."

Specifically, following the provisions reviewed above, RCW 71.09.060(1) states that:

> If *the court or* unanimous *jury* decides that the state has not met its burden of proving that the person is a sexually violent predator, *the court* shall direct the person's release.

RCW 71.09.060(1) (emphasis added). Similarly, the next sentence delineates distinct steps for first the jury and then for the court to take, thus defining different roles, temporally and functionally:

> If *the jury* is unable to reach a unanimous verdict, *the court* shall declare a mistrial and set a retrial.

Id. (emphasis added). It nearly goes without saying that juries do not direct a

8

person's release or declare mistrials in our legal system. Thus, in this provision, the legislature carved out a role for the jury and a separate role for the court.

In contrast, section (2) of the statute specifically and repeatedly describes a role for "the court" with no mention of a jury. Again, it is "*the court* [which] shall first hear evidence and determine whether the person did commit the act or acts charged . . ." RCW 71.09.060(2) (emphasis added). Likewise, it is the court which "[a]fter hearing evidence on this issue . . ." shall make specific findings on whether the person "did commit the act or acts charged" and other findings. Id. And finally, it is the court at "the conclusion of the hearing" which "shall enter a final order." Id. Unlike in section (1), none of the actions set out in section (2) mention any role for a jury. And, again, juries do not *enter* "final orders" in our legal system.

Moreover, it is clear that the legislature intended the provisions of this statute to be read together. The first sentence of section (2) directly refers the reader back to section (1), stating: "if . . . commitment is sought . . . pursuant to subsection (1) of this section." Id. That sentence also connects the two subsections with the conjunction "and." We do not consider these connections superfluous or meaningless, giving effect to all language used. Linville v. Dep't of Ret. Sys., 11 Wn. App. 2d 316, 321, 452 P.3d 1269 (2019). Indeed, at oral argument on appeal, counsel for Ross acknowledged the two provisions of the statute "work together."[1] Therefore, the two sections are properly read in

---

[1] Wash. Ct. of Appeals oral argument, In re the Detention of Randy Ross, No. 85652-9-I (March 7, 2024) at 1 min., 54 sec. through 2 min., 15 sec., video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2024031199/?eventID=2024031199.

conjunction with each other.

It is a "fundamental rule of statutory construction . . . that the legislature is deemed to intend a different meaning when it uses different terms." Roggenkamp, 153 Wn.2d at 625. "Because the legislature chose different terms, we must recognize that a different meaning was intended by each term." Id. at 626. Here, the full context of the statute makes clear that certain tasks are within the purview of the "court" without the jury, such as directing a respondent's release, declaring a mistrial, making sundry findings, and enacting "final orders." RCW 71.09.060(1), (2). And, the legislature makes equally clear the circumstances when the jury plays its role as fact-finder in determining when someone qualifies as an SVP subject to detention. RCW 71.09.060(1).

In short, we "adopt the sense of the words which best harmonizes with the context." Roggenkamp, 153 Wn.2d at 623 (quoting McDermott v. Kaczmarek, 2 Wn. App. 643, 648, 469 P.2d 191 (1970)). And we achieve interpretive harmony when we respect the legislature's manifest intent to differentiate between the role of the jury in parts of section (1) and the unitary role of the court in section (2).

As to our third overarching reason, Ross again argues that the State is reading in the term "bench" in the provision that grants "all the constitutional rights available to defendants at criminal trials." Ross' argument assumes that this preliminary hearing is the type of hearing that would, as a matter of constitutional right, be determined by a jury at a criminal trial. We disagree (a) because this type of preliminary hearing is not determined by a jury pursuant to a "constitutional right available to defendants at criminal trials" and (b) because ample authority has

10

established SVP proceedings are not criminal trials at all.

Unlike in RCW 71.09.050 and .060(1), the process set out in RCW 71.09.060(2) is not the "trial" as to whether a person is an SVP.  Cf. RCW 71.09.060(1) (permitting a mistrial and retrial).  Instead, as Ross acknowledges, the process in section (2) is a preliminary "hearing" to determine whether the commission of the acts underlying the charge of a sexually violent crime occurred. Because the respondent to the SVP petition is incapacitated, by definition, the purpose of this hearing is *not* to assign guilt or culpability for the crime, but simply to determine whether the actions occurred and to make *additional* evidentiary findings.  RCW 71.09.060(2).[2]

This preliminary hearing in an SVP proceeding is comparable to a court's determination on a motion to dismiss, or any initial hearing on the relevance of certain evidence.  See, e.g., CrR 8.3(c) ("The court shall grant the motion if there are no material disputed facts and the undisputed facts do not establish a prima facie case of guilt."); ER 404(b).  Such hearings are not a trial at all, where the conclusion would be an acquittal, a finding of guilt, or even the imposition of incarceration, but rather are hearings on a specific evidentiary issue.  Because juries do not determine motions to dismiss or motions to exclude certain evidence,

---

[2] These additional findings include commentary on the quality of the hearing itself, namely:

> "the extent to which the person's incompetence or developmental disability affected the outcome of the hearing, including its effect on the person's ability to consult with and assist counsel and to testify on his or her own behalf, the extent to which the evidence could be reconstructed without the assistance of the person, and the strength of the prosecution's case."

RCW 71.09.060(2).

and thus such hearings do not involve a "constitutional right available to defendants at criminal trials," the preliminary hearing in RCW 71.09.060(2) likewise does not implicate the constitutional right to a jury determination.

Moreover, "Washington courts do not characterize SVP proceedings as quasi-criminal and have consistently held that the SVP statute is resolutely civil in nature." In re Det. of Reyes, 184 Wn.2d at 347. As such, "[w]e have repeatedly relied on this distinction as a basis for declining to extend certain rules from criminal law to SVP proceedings." Id. We decline to extend the right to a jury trial to this preliminary determination because, as analyzed herein, that is clearly not the intent of our legislature.

Citing to In re Det. of Greenwood, 130 Wn. App. 277, 122 P.3d 747 (2005), Ross argues the initial SVP hearing for this class of persons should include the same rights as criminal trials because the "intent" of the statute [is] "to protect Ross' liberty." However, that argument overstates the intent of the hearing and conflicts with this court's holding that "the requirement of the initial hearing is not an end in itself as with a criminal trial, but a part of a two-step process designed to *protect* incompetent individuals." Greenwood, 130 Wn. App. at 285. That is, as in other cases surveyed in Greenwood, the hearing provides an important but limited gatekeeping mechanism intended to protect the accused from unsubstantiated claims, which *then may* lead to the second step in the process, a *further* finding that the State proved beyond a reasonable doubt that the respondent met the statutory definition of an SVP and then *later* as the third step under the statute, the trial court *may* deprive them of liberty by ordering detention on the basis of the

12

jury's finding. Id.

Stated otherwise, and as Ross acknowledges, a finding by a jury that the State demonstrated that he meets the definition of an SVP would not constitute *punishment* for the predicate crime. Indeed, punishment for that crime may still occur at a later date if, for example, Ross' competency is restored, the State opts to refile the criminal charges, and he is convicted. Instead, as Ross also concedes, an SVP petition initiates a civil proceeding to incapacitate the respondent from future offenses and to rehabilitate them so they are safe to re-enter the community. See In re Det. of Reyes, 184 Wn.2d at 343; In re Young, 122 Wn.2d 1, 46, 857 P.2d 989 (1993).

Thus, because this preliminary hearing does not play the role of a traditional trial, in procedure or outcome, and courts consistently have held that petitions seeking to detain someone under ch. 71.09 RCW do not initiate criminal proceedings, Ross' argument fails.[3]

For these reasons, we conclude that the court here did not err in denying Ross' motion for a jury to determine whether he "committed the act." RCW 71.09.060(2).

B.    Whether Due Process Requires a Jury to Determine if a Predicate Act Occurred

---

[3] Finally, both before the trial court and here, Ross relies heavily on the simple fact that in Greenwood a jury determined whether the predicate act occurred. 130 Wn. App. at 285. While that is true, on appeal, he concedes that the reviewing court there was not presented with the question, and thus did not consider, whether that was the *appropriate* process. Accordingly, Greenwood is silent about who the fact finder should be for the hearing envisioned by RCW 71.09.060(2), and, thus, does not control here.

"'It is well settled that civil commitment is a significant deprivation of liberty, and thus individuals facing SVP commitment are entitled to due process of law.'" In re Det. of Hatfield, 191 Wn. App. 378, 396, 362 P.3d 997 (2015) (quoting In re Det. of Morgan, 180 Wn.2d 312, 320, 330 P.3d 774 (2014)). To determine whether a proceeding violates an individual's procedural right to due process, we consider three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. at 396-397 (quoting Mathews v. Eldridge, 424 U.S. 319, 335, 96 S. Ct. 893, 903, 47 L. Ed. 2d 18 (1976)).

"'When this three-factor test is applied in the context of SVP civil commitment cases, the first factor often weighs in favor of the individual because a person has "a significant interest in his [or her] physical liberty.'" Id. at 396 (alteration in original) (quoting In Re Det. Morgan, 180 Wn.2d at 330). "The third factor often weighs in favor of the State because the 'State has a compelling interest both in treating sex predators and protecting society from their actions.'" Id. at 397 (quoting In Re Det. Morgan, 180 Wn.2d at 322). "Thus, the balance often turns on the second factor." Id.

We hold as the State concedes, that the first factor weighs in favor of Ross because he has "a significant interest in his . . . physical liberty." Id. at 396.

As to the third factor, the State argues its interest in these hearings is very high because "the State's interest lies in an orderly, logical process of factfinding."

14

See State v. McCuistion, 174 Wn.2d 369, 394, 275 P.3d 1092 (2012) ("the State has a substantial interest in encouraging treatment, preventing the premature release of SVPs, and avoiding the significant administrative and fiscal burdens associated with evidentiary hearings."). Ross does not contest this particular interest of the State, but rather asserts that the State "has an interest in an accurate and just decision . . . [i]n other words, the State does not benefit from an erroneous denial of liberty." Ross, however, does not explain why the interests he identifies are in conflict with those offered by the State. Regardless, because of the State's strong interests in protecting our communities and offering treatment and rehabilitation opportunities, we hold that this factor weighs in favor of the State.

The second Mathews factor is, as expected, the most disputed question. Ross argues that the one person's determination that he meets the definition of an SVP, made without the benefits of a jury, risks procedural error. Ross supports his argument with cases supporting the right to community participation via jury for misdemeanor trials. Ross offers no authority in the context of SVP commitment proceedings.

On the contrary, our Supreme Court has expressly held that, "[g]iven the extensive procedural safeguards in chapter 71.09 RCW, the risk of an erroneous deprivation of liberty under the challenged amendments is low." McCuistion, 174 Wn.2d at 393. That court so held because, "before the State may commit an individual as an SVP, it must hold a full, evidentiary trial at which the individual enjoys an array of procedural protections . . ." Id. at 393 (quoting RCW 71.09.040-.060, .020(7)). Even if there is some risk of allowing a singular decision-maker to

15

conduct the preliminary hearing, the resulting harm is not the loss of liberty; a respondent may lose their liberty only if a unanimous jury finds that the State proved beyond a reasonable doubt that the respondent meets the definition of an SVP in the second step set out in the statute and a determination is made in the third step that no less restrictive option is appropriate. RCW 71.09.060(1). Our Supreme Court has held that when the statutory procedures are followed, the risk of erroneous deprivation of liberty is low.

Although Ross has a significant liberty interest, the State has similarly important interests and there are procedural safeguards in the SVP trial to minimize the risk of erroneous deprivation of actual liberty. Our consideration under the Mathews factors weighs in favor of a conclusion that the statutory procedures set out in RCW 71.09.060, including a judicial determination at the preliminary stage under subsection (2), do not deprive Ross of his right to procedural due process.

### III. CONCLUSION

We affirm the superior court.

Díaz, J.

WE CONCUR: