**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MAY 27, 2021

*Gonzáles, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MAY 27, 2021

*Susan L. Carlson*
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | No. 98496-4 |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| ALAN D. JENKS, | ) | Filed: May 27, 2021 |
| | ) | |
| Petitioner. | ) | |
| | ) | |
| | ) | |

WHITENER, J.—Alan Jenks was sentenced to life without parole under the Persistent Offender Accountability Act (POAA), part of the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW. One of his strike offenses was second degree robbery, which was removed from the list of most serious offenses in 2019. ENGROSSED SUBSTITUTE S.B. (ESSB) 5288, 66th Leg., Reg. Sess. (Wash. 2019). The amendment came into effect after Jenks' conviction, when his case was pending before the Court of Appeals. The Court of Appeals held that the amendment did not apply to his case and upheld his sentence.

The sole question before us is whether to apply ESSB 5288 to Jenks' case. The State argues that it cannot apply due to RCW 9.94A.345 and RCW 10.01.040.

*State v. Jenks (Alan D.)*, No. 98496-4

We agree with the State and hold that ESSB 5288 does not apply to Jenks' case. Although this outcome is harsh, the legislature commands this result. We affirm the decision of the Court of Appeals and uphold Jenks' sentence.

FACTS AND PROCEDURAL HISTORY

Jenks appeals his conviction of first degree robbery, which he committed in December 2014. The sentencing court determined that he had three strikes, and he was sentenced to life without parole under the POAA in June 2017. One of his strikes was second degree robbery. Two years after he was sentenced as a persistent offender, the legislature enacted ESSB 5288, which removed second degree robbery from the list of "most serious offenses"; it no longer counts as a strike under the POAA. LAWS OF 2019, ch. 187, § 1(33)(o).

ESSB 5288 came into effect on July 28, 2019. *Id.* At that time, Jenks' case was pending before the Court of Appeals. *State v. Jenks*, 12 Wn. App. 2d 588, 590, 459 P.3d 389 (2020). Jenks argued that ESSB 5288 should apply to his case because the amendment removed second degree robbery from the statute for "three-strike" sentencing purposes. *Id.* The Court of Appeals disagreed, upholding Jenks' persistent offender sentence to life in prison without possibility of release. *Id.*

*State v. Jenks (Alan D.)*, No. 98496-4

Jenks sought review in this court of that decision and other issues. We granted review only on the issue of whether ESSB 5288, amending RCW 9.94A.030, applies to his case. Order, No. 98496-4 (Wash. Sept. 9, 2020).[1]

Several amici briefs have been filed, which the State moved to strike, along with portions of the petitioner's supplemental brief. The motions were granted with respect to arguments concerning the constitutionality of the POAA, arguments not raised in the petition for review, and arguments solely raised by amici. Clerk's Letter Ruling, No. 98496-4 (Wash. Nov. 3, 2020). The motions to strike citations to secondary sources and to strike discussions of racial discrimination were denied. *Id.*

Nevertheless, Jenks and amici do raise serious concerns about the racially disproportionate impact of the POAA. Black defendants appear to receive life without parole sentences at a far greater rate than white defendants. Suppl. Br. of Pet'r at 1; Amicus Br. of King County Dep't of Pub. Def. et al. at 8-9; Br. of Amici Curiae Fred T. Korematsu Ctr. for Law & Equality et al. at 5. Indeed, the legislature itself acknowledged this in drafting ESSB 5288, noting that "[t]here is racial disparity in how the persistent offender statute is enforced. Four percent of the population [of Washington] is African American yet a disproportionate number have

---

[1] Jenks believes that we also granted review of his argument that the POAA violates equal protection because it does not require proof of prior offenses to a jury beyond a reasonable doubt, while, in other circumstances, such proof is necessary. Pet. for Review at 1-3. We did not. We granted review only on the "persistent offender *sentence* issue." Order, No. 98496-4 (emphasis added).

been convicted as persistent offenders." S.B. REP. ON S.B. 5288, 66th Leg., Reg. Sess. (Wash. 2019). However, these issues are not before the court, as noted above. Such constitutional consideration must await the appropriate case, and Jenks' case must await a legislative fix.[2]

## STANDARD OF REVIEW

A sentencing court's decision to consider a prior conviction as a strike is reviewed de novo. *State v. Thiefault*, 160 Wn.2d 409, 414, 158 P.3d 580 (2007). This case primarily involves questions of statutory interpretation; such questions are also subject to de novo review. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002).

## ANALYSIS

In Washington, "'the fixing of legal punishments for criminal offenses is a legislative function.'" *State v. Hughes*, 154 Wn.2d 118, 149, 110 P.3d 192 (2005), (quoting *State v. Ammons*, 105 Wn.2d 175, 180, 713 P.2d 719 (1986)), *abrogated*

---

[2] That legislative fix has arrived, with the signing of Engrossed Senate Bill 5164 into law on April 26, 2021. *See* ENGROSSED S.B. 5164, 67th Leg., Reg. Sess. (Wash. 2021) (http://lawfilesext.leg.wa.gov/biennium/2021-22/Pdf/Bills/Session/%20Laws/Senate/5164.SL.pdf?q=20210513094734). This bill provides Jenks with *exactly* the relief he wants: it mandates resentencing for those sentenced to life without parole as persistent offenders for those whose strike offenses include second degree robbery, and it requires that the resentencing be conducted as if second degree robbery is not a strike. *Id.* When effective on July 25, 2021, this new law will grant Jenks exactly what he requested of us: resentencing as if second degree robbery is not a strike offense.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*on other grounds by Washington v. Recuenco*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006). It is therefore "'the function of the legislature and not of the judiciary to *alter* the sentencing process.'" *Id.* (internal quotation marks omitted) (quoting *Ammons*, 105 Wn.2d at 180). Two statutes regarding legislative commandments for punishment are implicated by this case: RCW 9.94A.345 and RCW 10.01.040.

These statutes control the result of amendments to penal statutes in Washington. At common law, the rule was that where "a statute is repealed, it is, as regards its operative effect, considered as if it had never existed, except as to matters and transactions past and closed, and all pending litigation must be decided according to the state of the law at the time of the decision." *State v. Zornes*, 78 Wn.2d 9, 12, 475 P.2d 109 (1970) (plurality opinion), *overruled on other grounds by United States v. Batchelder*, 442 U.S. 114, 99 S. Ct. 2198, 60 L. Ed. 755 (1979). But the legislature changed that, first, over a century ago with RCW 10.01.040 and, again, decades ago with RCW 9.94A.345. Under these statutes—as discussed in more detail below—sentences imposed under the SRA are generally meted out in accordance with the law in effect at the time of the offense. *See* RCW 9.94A.345; RCW 10.01.040.

Today, we consider ESSB 5288 in light of RCW 9.94A.345 and RCW 10.01.040. ESSB 5288 came into effect in July 2019, while Jenks' case was pending

*State v. Jenks (Alan D.)*, No. 98496-4

on appeal. LAWS OF 2019, ch. 187. As a statute, ESSB 5288 is construed based on its plain language, including that of related enactments; if unambiguous, its plain language provides the beginning and the end of the analysis. *Campbell & Gwinn*, 146 Wn.2d at 9-12. "Language is unambiguous when it is not susceptible to two or more interpretations." *State v. Delgado*, 148 Wn.2d 723, 726, 63 P.3d 792 (2003).

ESSB 5288 is unambiguous. The legislature describes the statute as "AN ACT Relating to removing robbery in the second degree from the list of offenses that qualify an individual as a persistent offender; and amending RCW 9.94A.030." ESSB 5288, LAWS OF 2019, ch. 187 pmbl. The amendment removed "[r]obbery in the second degree" from the list of most serious offenses. LAWS OF 2019, ch. 187, § 1(33)(o). RCW 9.94A.030 was otherwise unchanged. Its effects are clear: it simply removes second degree robbery from the list of most serious offenses. While the legislature contemplated making this change retroactive, such that those previously sentenced to life without parole due to a second degree robbery strike could obtain resentencing, this provision was removed from the legislation before the bill was enacted. *See* Amend. 5288-S AMS PADD S2657.1 to ESSB 5288, at 1, 66th Leg., Reg. Sess. (Wash. 2019). Therefore, this change does not apply to Jenks' case due to the operation of RCW 9.94A.345 and RCW 10.01.040. The enactments of the legislature demand this result.

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Jenks (Alan D.)*, No. 98496-4

I.   Both RCW 9.94A.345 and RCW 10.01.040 require that Jenks be sentenced under the statutory scheme in effect *at the time* of his offense, not the amendment found in ESSB 5288

A. RCW 9.94A.345 precludes the application of ESSB 5288 to Jenks' case

RCW 9.94A.345 commands, "Any sentence imposed under this chapter *shall* be determined in accordance with the law *in effect* when the current offense was committed." (Emphasis added.) This plain language is unambiguous. *See Delgado*, 148 Wn.2d at 726-27 ("Language is unambiguous when it is not susceptible to two or more interpretations."). RCW 9.94A.345 clearly commands that sentences imposed under "this chapter"—the SRA—be imposed under the law in effect at the time of the crime. We have repeatedly invoked RCW 9.94A.345 for just this purpose. *See, e.g.*, *State v. Medina*, 180 Wn.2d 282, 287, 324 P.3d 682 (2014) (citing RCW 9.94A.345 for the proposition that "a defendant must be sentenced in accordance with the law in effect at the time of his or her offense"); *In re Pers. Restraint of Carrier*, 173 Wn.2d 791, 808-09, 272 P.3d 209 (2012) (same).

RCW 9.94A.345 thus applies straightforwardly to this case. Jenks' current offense was first degree robbery, committed in December 2014. At that time—as now—Jenks' sentence as a persistent offender occurred under chapter 9.94A RCW; thus, RCW 9.94A.345 applies to his sentence. *See* former RCW 9.94A.030(37) (2012) (defining "persistent offender"); RCW 9.94A.570 (sentences for persistent offenders). The law in effect at that time, former RCW 9.94A.030(32)(o) (2012),

7

listed second degree robbery a most serious offense. Therefore former RCW 9.94A.030(32)(o) applies, not ESSB 5288.

Under former RCW 9.94A.030(32)(o), Jenks had three strikes: one conviction for second degree robbery (at issue here) as well as two convictions for first degree robbery, including his current offense. Clerk's Papers at 114. His conviction mandated a life without parole sentence as a persistent offender. *See* former RCW 9.94A.030(37); RCW 9.94A.570. Even though RCW 9.94A.030 was later amended, that does not assist Jenks because RCW 9.94A.345 commands sentencers to look to the law in effect at the time of the crime.

Jenks argues that RCW 9.94A.345 does not apply because the legislature's statement of intent, included in the Laws of 2000, chapter 26—which enacted RCW 9.94A.345—prevents its application here. This statement of intent reads, in full:

> This act is intended to cure any ambiguity that might have led to the Washington supreme court's decision in *State v. Cruz*, Cause No. 67147-8 (October 7, 1999). A decision as to whether a prior conviction shall be included in an individual's offender score should be determined by the law in effect on the day the current offense was committed. This act is also intended to clarify the applicability of statutes creating new sentencing alternatives or modifying the availability of existing alternatives.

LAWS OF 2000, ch. 26, § 1. Jenks argues that RCW 9.94A.345 therefore "is meant to apply *only* to the calculation of the offender score and the determination of eligibility for sentence alternatives." Pet. for Review at 11 (emphasis added).

*State v. Jenks (Alan D.)*, No. 98496-4

We do not adopt Jenks' reading of this statement of intent. The statement of intent made express only one purpose, and one of the effects, of the statute—nothing more. *See Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003) ("[A] court must not add words where the legislature has chosen not to include them."). The word "only" is not found in the statement of intent: it thus does not limit the reach of RCW 9.94A.345 to the statement of intent. To the extent this statement of intent is perceived to add any ambiguity to the application of RCW 9.94A.345, that ambiguity is cured by looking to other legislative enactments regarding the SRA. The legislature has also said—in an analogous statement of intent in another amendment to RCW 9.94A.030—that "each time the legislature has amended the [SRA], the legislature intended that an offender's criminal history . . . be determined using the statutory provisions that were in effect on the day the current offense was committed." LAWS OF 2002, ch. 107, § 1. This makes clear that RCW 9.94A.345 applies to situations like the one before us today.

Indeed, we have not interpreted the statement of intent as limiting the reach of RCW 9.94A.345. We have instead applied RCW 9.94A.345 to various issues relating to sentencing, not only those described in the statement of intent. *See, e.g., Medina*, 180 Wn.2d at 287 (applying RCW 9.94A.345 to determine what laws governed "credit for time served" at the time of the offense).

9

Jenks makes contrary claims. In his briefing, Jenks argues that in *State v. Pillatos*, 159 Wn.2d 459, 150 P.3d 1130 (2007), we "relied on that very statement of limited intent to conclude RCW 9.94A.345 did not prevent application of new sentencing statutes to crimes committed long before their enactment." Suppl. Br. of Pet'r at 19-20 (citing *Pillatos*, 159 Wn.2d at 472-73). But *Pillatos* is better distinguished than followed. In *Pillatos*, we dealt with whether a new statute, which gave juries the responsibility of finding facts that could justify a sentence above the standard range, could be applied to defendants who had committed crimes before the enactment of the statute but who were tried afterward. 159 Wn.2d at 465. We held that RCW 9.94A.345 did not bar the application of the new statute. *Id.* at 472-73. We discussed how the "legislature's express intent" in enacting RCW 9.94A.345 "was to overrule [*State v.*] *Cruz*[, 139 Wn.2d 186, 985 P.2d 384 (1999)], at least prospectively, and make clear that defendants had no vested rights in prior, more lenient, offender score calculation statutes." *Id.* But immediately after discussing this legislative intent, we stated:

> In this case, both past and present law allows for exceptional sentencing. The "law in effect when the current offense was committed," reasonably read, includes the possibility of exceptional sentences, and the change in procedures *does not violate the letter or purpose* of RCW 9.94A.345.

*Id.* at 473 (emphasis added).

*State v. Jenks (Alan D.)*, No. 98496-4

Here, by contrast, applying the amendment *would* directly "violate the letter . . . of RCW 9.94A.345" because it would lead to Jenks' being sentenced under a law *other* than that which was in effect at the time of the crime. *Id.* And unlike in *Pillatos*, the law in existence at the time of Jenks' offense could *not* contemplate the possibility that second degree robbery would not be a most serious offense. If the law in effect at the time could include the possibility of being repealed, then RCW 9.94A.345 would be read out of existence—an impermissible result. *See State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003) ("'Statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous.'" (internal quotation marks omitted) (quoting *Davis v. Dep't of Licensing*, 137 Wn.2d 957, 963, 977 P.2d 554 (1999))).[3]

Additionally, Jenks argued at oral argument that RCW 9.94A.345 is in derogation of the common law and thus must be strictly construed. Wash. Supreme Court oral argument, *State v. Jenks*, No. 98496-4 (Nov. 17, 2020), at 5 min., 00 sec., *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org. But strict construction would not help Jenks, as it cannot limit

---

[3] At oral argument, Jenks went further, asserting that in *Pillatos* we held that the RCW 9.94A.345 controls only the situations discussed in its statement of intent. Wash. Supreme Court oral argument, *State v. Jenks*, No. 98496-4 (Nov. 17, 2020), at 40 min, 4 sec., *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org. As the above discussion indicates, *Pillatos* contains no such holding. 159 Wn.2d at 472-73.

11

*State v. Jenks (Alan D.)*, No. 98496-4

the statute to its statement of intent, despite Jenks' arguments to the contrary. *See id.* "Strict construction requires that, 'given a choice between a narrow, restrictive construction and a broad, more liberal interpretation, we must choose the first option.'" *In re Det. of Hawkins*, 169 Wn.2d 796, 801, 238 P.3d 1175 (2010) (quoting *Pac. Nw. Annual Conference of United Methodist Church v. Walla Walla County*, 82 Wn.2d 138, 141, 508 P.2d 1361 (1973)). A strict construction is therefore *not* one that runs *counter* to the text of the statute, *see id.*—which is precisely Jenks' request. Indeed, it would not narrow but, instead, delete the language of RCW 9.94A.345 to limit its reach to the few situations discussed in its statement of intent.

In sum, RCW 9.94A.345 applies, precluding the application of ESSB 5288 to Jenks' case.

## B. RCW 10.01.040 also precludes application of ESSB 5288 here

The saving clause statute, RCW 10.01.040, also applies. The relevant portion of RCW 10.01.040 reads:

> Whenever any criminal or penal statute shall be amended or repealed, all offenses committed or penalties or forfeitures incurred while it was in force shall be punished or enforced as if it were in force, notwithstanding such amendment or repeal, unless a contrary intention is expressly declared in the amendatory or repealing act, and every such amendatory or repealing statute shall be so construed as to save all criminal and penal proceedings, and proceedings to recover forfeitures, pending at the time of its enactment, unless a contrary intention is expressly declared therein.

The saving clause created by this statute "'is deemed a part of every repealing statute as if expressly inserted therein, and hence renders unnecessary the incorporation of an individual saving clause in each statute which amends or repeals an existing penal statute.'" *State v. Ross*, 152 Wn.2d 220, 237, 95 P.3d 1225 (2004) (quoting *State v. Hanlen*, 193 Wash. 494, 497, 76 P.2d 316 (1938)).

Jenks' case presents us with precisely the situation contemplated by RCW 10.01.040. Jenks committed his crime when the former RCW 9.94A.030(32)(o) (2012) "was in force," and subsequently that "penal statute" was "repealed," meaning that his crime should be "punished . . . as if [that statute] were in force." RCW 10.01.040. Thus RCW 10.01.040 requires that Jenks be sentenced under the regime that existed *prior* to ESSB 5288. As discussed above, under the prior sentencing regime, second degree robbery was a most serious offense, Jenks had three strikes, and therefore his third conviction resulted in life without parole. *See* discussion *supra* pp. 6-7.

"To avoid application of the savings clause, we have not required that the legislature *explicitly* state its intent that amendments repealing portions of criminal and penal statutes apply retroactively to pending prosecutions for crimes committed before the amendments' effective date. Instead, 'such intent need only be expressed in words that fairly convey that intention.'" *Ross*, 152 Wn.2d at 238 (internal quotation marks omitted) (quoting *State v. Kane*, 101 Wn. App. 607, 612, 5 P.3d 741

*State v. Jenks (Alan D.)*, No. 98496-4

(2000)); *see also Zornes*, 78 Wn.2d at 13 (strictly construing RCW 10.01.040 in this manner because it is in derogation of the common law).That said, ESSB 5288's language does not fairly convey intent to exclude the saving clause. As noted above, the legislature describes the statute as "AN ACT Relating to removing robbery in the second degree from the list of offenses that qualify an individual as a persistent offender; and amending RCW 9.94A.030." LAWS OF 2019, ch. 187 pmbl. That is all that the amendment accomplishes: removing second degree robbery from the list of most serious offenses. *See id.* § 1(33)(o).

This contrasts clearly with cases where we found such intent. For instance, in *Zornes*, we held that the amendment excluded the saving clause because it stated that "'the provisions of this chapter shall *not ever* be applicable to any form of cannabis.'" 78 Wn.2d at 11 (emphasis omitted) (quoting LAWS OF 1969, 1st Ex. Sess., ch. 256). "If the provisions of the uniform narcotics act are not 'ever' to be applied to cannabis," we concluded, "they are not to be applied in any case, whether pending or arising in the future." *Id.* at 13-14.

ESSB 5288 does not contain language similar to that in *Zornes*, whose "not ever" language was read as stretching backward in time. *Id*. ESSB 5288 simply removes second degree robbery from the list of most serious offenses; this change unambiguously does *not* convey any intent to overcome the saving clause or for the statute to apply retroactively.

14

*State v. Jenks (Alan D.)*, No. 98496-4

Although we need not go further, legislative history only reaffirms this conclusion. *See Campbell & Gwinn*, 146 Wn.2d at 12 (we turn to legislative history when plain language does not resolve the question of statutory interpretation); *see also Barstad v. Stewart Title Guar. Co.*, 145 Wn.2d 528, 536-37, 39 P.3d 984 (2002) (we may look to legislative history to determine whether the statute was intended to be retroactive). At one point, the amendment permitted those previously sentenced as persistent offenders to be resentenced if one of their strikes was second degree robbery; however, the legislature *removed* the provision requiring resentencing before the bill was enacted. Amend. 5288-S AMS PADD S2657.1 to ESSB 5288, at 1. While such express retroactive language would exempt a statute from the application of RCW 10.01.040 (as well as RCW 9.94A.345), the legislature chose not to include it. Thus, none of the legislature's actions indicate that they intended to overcome the application of RCW 10.01.040.

Jenks argues that the saving clause statute is not substantive and, therefore, does not apply. RCW 10.01.040 applies only to substantive changes in the law, not procedural ones. *Pillatos*, 159 Wn.2d at 472. But ESSB 5288 is substantive: we have repeatedly made clear that changes to criminal punishments are substantive, not procedural. *See State v. Smith*, 144 Wn.2d 665, 674, 30 P.3d 1245 (2001) (changing the meaning of the term "criminal history" in the SRA was a substantive change);

15

*State v. Jenks (Alan D.)*, No. 98496-4

*Cruz*, 139 Wn.2d at 192 (holding an amendment was substantive when it dealt with punishment rather than procedures of a criminal trial).

*Pillatos* provides a clear contrast, as well. There, we held that RCW 10.01.040 did not apply to what we labeled a procedural amendment to the SRA. *Pillatos*, 159 Wn.2d at 472. The amendment in *Pillatos* required juries to find facts that justified an exceptional sentence above the standard range. *Id.* at 465. Unlike ESSB 5288, it did not change the punishment for offenses or the type of punishments possible, only the manner in which that punishment was determined. *See id. Pillatos* therefore does not render ESSB 5288 procedural.

In sum, RCW 10.01.040 applies alongside RCW 9.94A.345, also preventing the application of ESSB 5288 to Jenks' case.

## II. Jenks' remaining arguments are unpersuasive

### A. *Ramirez* does not control

Jenks argues that *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018), should apply to his case. Jenks' arguments regarding *Ramirez* are bound up with a prospective application argument. But ESSB 5288 does not apply prospectively to Jenks' case. "[A] statute applies prospectively," rather than retroactively, "if the precipitating event under the statute occurred after the date of enactment." *Carrier*, 173 Wn.2d at 809. "To determine what event precipitates or triggers application of the statute, we look to the subject matter regulated by the statute." *Id.*

16

*State v. Jenks (Alan D.)*, No. 98496-4

ESSB 5288 regulates which prior convictions count as a most serious offense and, thus, who qualifies as a persistent offender under the POAA. LAWS OF 2019, ch. 187, § 1. Current and former RCW 9.94A.030(37)(a)(i) and (ii) (2012) show that the triggering event for determining who qualifies as a persistent offender occurs when someone has been convicted of a most serious offense *and* was also, in the past, convicted of two other most serious offenses on separate occasions. Here, the triggering event was Jenks' 2017 conviction for first degree robbery. That occurred before the enactment of ESSB 5288 in 2019: the amendment therefore cannot apply prospectively to Jenks' case.

Jenks impliedly disagrees by arguing that *Ramirez* controls. In *Ramirez*, we considered whether an amendment to the criminal filing fee statute, House Bill 1783,[4] applied prospectively to Ramirez's case. *Ramirez*, 191 Wn.2d at 748. That provision was enacted after we granted review but before we heard the case. *Id.* Relying on *State v. Blank*, 131 Wn.2d 230, 930 P.2d 1213 (1997), where "[w]e concluded that the 'precipitating event' for a statute 'concerning attorney fees and costs of litigation' was the termination of the defendant's case," we held that House Bill 1783 applied prospectively to Ramirez's case. *Ramirez*, 191 Wn.2d at 749 (quoting *Blank*, 131 Wn.2d at 249). Specifically, we reasoned that "[b]ecause House

---

[4] ENGROSSED SECOND SUBSTITUTE H.B. 1783, 65th Leg., Reg. Sess. (Wash. 2018) (House Bill 1783).

*State v. Jenks (Alan D.)*, No. 98496-4

Bill 1783's amendments pertain to costs imposed upon conviction and Ramirez's case was not yet final when the amendments were enacted, Ramirez [was] entitled to benefit from this statutory change." *Id.* The triggering event was the termination of all appeals, at which point the costs were finalized. *Id.*

Jenks argues that because we held that the statute in *Ramirez* applied to a case where sentencing was completed and the appeals not yet finalized, we should do the same here. We decline to expand *Ramirez*. *Ramirez* and *Blank*, the case on which *Ramirez* was largely based, dealt with the narrow subject matter of "costs imposed upon conviction." *Ramirez*, 191 Wn.2d at 749 (discussing *Blank*, 131 Wn.2d 230). Such subject matter is not analogous to the determination of whether a defendant qualifies as a persistent offender, as is the case here.

Jenks also takes *Ramirez*'s failure to mention RCW 10.01.040 as proof that it did not bar application of the amendment in *Ramirez* and, thus, should not bar it here. We decline to draw this inference. *Ramirez*'s silence on this statute means only that it does not control how we apply RCW 10.01.040 today. *See Ross*, 152 Wn.2d at 239 (also distinguishing cases because they did not discuss the saving clause).

In sum, ESSB 5288 does not apply prospectively to Jenks' case. *Ramirez* does not alter that conclusion.

*State v. Jenks (Alan D.)*, No. 98496-4

B. *Wiley* and *Heath* are also inapplicable here

Jenks also relies on *State v. Heath*, 85 Wn.2d 196, 532 Wn.2d 621 (1975), and

*State v. Wiley*, 124 Wn.2d 679, 880 P.2d 983 (1994). Both were decided without

reference to RCW 10.01.040, and Jenks argues that they thus stand for the

proposition that the saving clause statute did not apply there and likewise should not

apply here. We disagree.

In *Heath*, we held that a new amendment applied retroactively in a civil

proceeding. 85 Wn.2d at 197-98. As Jenks noted in his briefing, we stated that when

the penalty for a crime is reduced, "the legislature is presumed to have determined

that the new penalty is adequate and that no purpose would be served by imposing

the older, harsher one." *Id*. at 198. We added that "[t]his rule has even been applied

in the face of a statutory presumption against retroactivity and the new penalty

applied in all pending cases." *Id.* (citing *In re Estrada*, 63 Cal.2d 740, 408 P.2d 948,

48 Cal. Rptr. 172 (1965); *People v. Oliver*, 1 N.Y.2d 152, 134 N.E.2d 197, 151

N.Y.S.2d 367 (1956)).

*Heath* does not control, as we established in *Ross*, 152 Wn.2d at 239 and n.11.

In *Ross*, we faced the question of whether amendments dealing with the calculation

of offender scores applied retroactively. *Id.* at 233-34. In concluding that they did

not, we distinguished *Heath*. *Id.* at 239. We reasoned that "*Heath* did not directly

implicate the savings clause since it pertained to amendments governing *civil* driver

19

*State v. Jenks (Alan D.)*, No. 98496-4

license revocations under the Washington Habitual Traffic Offenders Act." *Id.* (emphasis added). The same is true here: this is a criminal case, not a civil proceeding. *Ross* also specifically discounted *Heath*'s statement that legislation reducing penalty for a crime is retroactive even "'in the face of a statutory presumption against retroactivity'":

> [S]ince *Heath* involved amendments to the portion of the Washington Habitual Traffic Offenders Act that governs license revocation proceedings, the savings clause was not directly implicated. Thus, we refuse to extend this language in *Heath* to cases where the savings clause clearly requires this court to enforce statutory amendments to the penal code prospectively.

*Ross*, 152 Wn.2 at 239 n.11 (citation omitted) (quoting *Heath*, 85 Wn.2d at 198).

*Ross*'s reasoning applies here with equal force.

*Wiley* can be similarly distinguished. In *Wiley*, we considered whether a change in law applied "retroactively to the prior convictions used to calculate an offender score under the SRA." 124 Wn.2d at 682. We held that "when the Legislature downgrades the status of an offense"—that is, from a felony to a misdemeanor—"a sentencing court must give retroactive effect to the Legislature's decision." *Id.* at 687. *Ross* distinguished *Wiley* on the ground it "did not address the effect of the savings clause." *Ross*, 152 Wn.2d at 239. *Wiley* does not apply here for the same reason. Further, *Wiley* held that a change is retroactive when a crime is downgraded from a felony to a misdemeanor. 124 Wn.2d 686-87. Here, second degree robbery was removed from the list of most serious offenses: no crime was

20

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

downgraded from a felony to a misdemeanor. For those reasons, we do not follow

*Wiley* today.

### C. Jenks' remaining arguments are unpersuasive

Jenks argues that we should follow the principle that "new decisional law can

apply 'to all cases . . . pending on direct review.'" Pet. for Review at 6 (quoting *State*

*v. Evans*, 154 Wn.2d 438, 444, 114 P.3d 627 (2005)). But this has no bearing on the

question before us here. This case concerns amendments to statutes, not new

decisional law.

Jenks also argues that RCW 9.94A.345 and RCW 10.01.040 impermissibly

attempt to "control a future Legislature's ability to amend or enact statutes." Suppl.

Br. of Pet'r at 7 (discussing RCW 10.01.040); *see also id.* at 18-19 (discussing RCW

9.94A.345). Jenks relies on *Washington State Farm Bureau Federation v. Gregoire*,

162 Wn.2d 284, 174 P.3d 1142 (2007), for this argument. There, we stated, as a

familiar principle of law, that "[i]mplicit in the plenary power of each legislature is

the principle that one legislature cannot enact a statute that prevents a future

legislature from exercising its law-making power." *Id*. at 301. But the statutes at

issue here do not limit the ability of the legislature to exercise its lawmaking power

in the future. Were the legislature to decide to repeal either of them or expressly craft

statutes that were exempt from them, it could do so.

Jenks also argues that RCW 10.73.100(6) applies to or informs the resolution of his case. But this provision provides an exception to RCW 10.73.090, the one-year time bar for filing a personal restraint petition; it does not apply here. *See* RCW 10.73.100 ("The time limit specified in RCW 10.73.090 does not apply to a petition or motion that is based solely on one or more of the following grounds.").

At oral argument, Jenks also asserted that ESSB 5288 is remedial and therefore applies retroactively to his case. Wash. Supreme Court oral argument, *supra*, at 7 min., 56 sec. We do not reach this question. Jenks argued that ESSB 5288 was remedial before the Court of Appeals. *Jenks*, 12 Wn. App. 2d at 599. The Court of Appeals held that the remedial nature of the amendment was irrelevant, due to the operation of RCW 10.01.040. *Id.* at 600. Jenks did not ask us for review of this holding or argue that ESSB 5288 is remedial in his petition for review. Therefore, the issue of whether ESSB 5288 is remedial is not properly before the court, and we decline to reach it. *See* RAP 13.7(b).[5]

---

[5] The dissent argues that, in its view, under article I, section 14 of our constitution, leaving in place life without parole sentences when one of the strikes was second degree robbery where a newly sentenced offender would not receive a life without parole sentence with the same criminal history is cruel punishment, and that we must use the doctrine of constitutional avoidance to prevent such a result. Leaving aside that we express no view on this constitutional argument, constitutional avoidance would not command this result. "[A] statute will be construed so as to avoid constitutional problems, *if possible*." *State v. Chester*, 133 Wn.2d 15, 21, 940 P.2d 1374 (1997) (emphasis added). Or, as the dissent puts it, we must "choose an interpretation that avoids running afoul of article I, section 14." Dissent at 7. But it is *not* possible to *choose* a different interpretation. The statutory scheme clearly commands the result we reach. Any other interpretation overrides the clear intent

22

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

CONCLUSION

We hold that ESSB 5288 does not apply to Jenks' case and affirm the Court of Appeals, upholding Jenks' sentence of life without parole. In this case, the enactments of the legislature command this result.

---

of the legislature as expressed in the statute's language and scheme, supported by legislative history. *See In re Parentage of C.A.M.A.*, 154 Wn.2d 52, 69, 109 P.3d 405 (2005) (we do not rewrite statutes to avoid constitutional problems). What the dissent appears to truly seek is to strike down the statute as unconstitutional—but that argument itself was stricken and is not before the court.

The dissent's invocation of the "rule that a newly enacted statute generally applies to cases pending on direct appeal and not yet final" does not provide reason for an alternative interpretation. Dissent at 7. As discussed at length above, the enactments of the legislature demand this result. *See* RCW 9.94A.345; RCW 10.01.040.

_____
Whitener, J.


WE CONCUR.


_____          _____
González, C.J.                           Stephens, J.


_____          _____
Johnson, J.                              Gordon McCloud, J.


_____          _____


_____          _____
Owens, J.

*State v. Jenks (Alan D.)*, No. 98496-4 (Yu, J., concurring)

No. 98496-4

YU, J. (concurring)—This case concerns the legislature's decision to remove second degree robbery as a predicate (strike) for purposes of sentencing individuals to life without the possibility of parole under the Persistent Offender Accountability Act (Three Strikes Law), RCW 9.94A.570. LAWS OF 2019, ch. 187, § 1 (the amendment). I agree with the majority's holding that the legislature did not intend for the amendment to apply to Alan Jenks' life sentence and that this outcome is "harsh." Majority at 2. I also agree that Jenks and amici[1] raise "serious concerns about the racially disproportionate impact" of the Three Strikes Law. *Id.* at 3. I write separately to emphasize that while the legislature commands the harsh result of affirming Jenks' life sentence, the constitution and the ends of justice do not. CONST. art. I, § 14.

---

[1] Two amici briefs were filed in support of Jenks, the first by the Fred T. Korematsu Center for Law and Equality, American Civil Liberties Union of Washington, Columbia Legal Services, Justice Policy Institute, The Sentencing Project, Washington Association of Criminal Defense Lawyers, and Washington Defender Association and the second by the King County Department of Public Defense, the NAACP Alaska Oregon Washington-State Area Conference, Community Passageways, Concerned Lifers Organization, the Black Prisoners' Caucus at the Washington State Reformatory, and Yoga Behind Bars.

*State v. Jenks (Alan D.)*, No. 98496-4 (Yu, J., concurring)

In order to serve the ends of justice, the court retains discretion to waive any appellate rule on its own initiative, including RAP 13.7(b)'s rule limiting review to the questions raised in the petition for review and the answer. RAP 1.2(c); RAP 18.8(a); *see, e.g.*, *Tuerk v. Dep't of Licensing*, 123 Wn.2d 120, 124, 864 P.2d 1382 (1994) (citing *Kruse v. Hemp*, 121 Wn.2d 715, 721, 853 P.2d 1373 (1993)). "[W]hile we generally decline to reach issues not properly presented by the parties, 'this court has inherent authority to consider issues not raised by the parties if necessary to reach a proper decision.'" *Filo Foods, LLC v. City of SeaTac*, 183 Wn.2d 770, 792, 357 P.3d 1040 (2015) (quoting *Alverado v. Wash. Pub. Power Supply Sys.*, 111 Wn.2d 424, 429, 759 P.2d 427 (1988)). Consequently, the court should have denied the State's motions to strike the constitutional arguments so that we might have reached the ultimate question regarding these life sentences. *See also* RAP 12.1(b) ("If the appellate court concludes that an issue which is not set forth in the briefs should be considered to properly decide a case, the court may notify the parties and give them an opportunity to present written argument on the issue raised by the court.").[2]

---

[2] "The appellate court has the authority to determine whether a matter is properly before it, and to perform all acts necessary or appropriate to secure the fair and orderly review of a case." RAP 7.3. The court recently answered a constitutional issue involving the Three Strikes Law in the same manner it granted review here. *Compare* Order, No. 98496-4 (Wash. Sept. 9, 2020), *with* Order, No. 95263-9 (Wash. Feb. 6, 2019) (granting review "only on the persistent offender sentence issue"). The court should not delay the constitutional issue present here for a personal restraint petition. *See* RAP 16.4(b)(4); *e.g.*, *In re Pers. Restraint of Meippen*, 193

*State v. Jenks (Alan D.)*, No. 98496-4 (Yu, J., concurring)

While the legislature intended to prospectively remove second degree robbery as a strike in the Three Strikes Law, the individuals that the legislature left behind are disproportionately people of color and frequently disproportionately punished. Our court has previously acknowledged the severity of these sentences, and the reality of who was left out should give us pause. *See State v. Moretti*, 193 Wn.2d 809, 833, 446 P.3d 609 (2019) ("Mandatory life in prison without the possibility of parole is the harshest sentence currently available in Washington." (citing *State v. Gregory*, 192 Wn.2d 1, 5, 427 P.3d 621 (2018) (plurality opinion) (declaring the death penalty unconstitutional)); *cf. Pers. Adm'r v. Feeney*, 442 U.S. 256, 275, 99 S. Ct. 2282, 60 L. Ed. 2d 870 (1979) ("If the impact of this statute could not be plausibly explained on a neutral ground, impact itself would signal that the real classification made by the law was in fact not neutral.").

I agree with amici that "[t]he extreme race disproportionality of those sentenced to die in prison because of at least one [second degree robbery] strike is, in part, a product of Washington's racial past." Br. of Amici Curiae Fred T. Korematsu Ctr. for Law & Equality et al. at 2. Of the 62 people serving life without the possibility of parole sentences due to a second degree robbery strike, "[a]bout half are [B]lack, despite African Americans making up only 4% of

Wn.2d 310, 315-16, 440 P.3d 978 (2019) (declining to reach question on significant change in the law).

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Jenks (Alan D.)*, No. 98496-4 (Yu, J., concurring)

Washington's population." Tom James, *Lifer Inmates Excluded from Washington '3 Strikes' Change*, SEATTLE TIMES (May 20, 2019, 10:11 PM, updated May 22, 2019, 7:49 PM), https://www.seattletimes.com/seattle-news/its-just-wrong-3-strikes-sentencing-reform-leaves-out-62-washington-state-inmates/ [http://perma.cc/26V4-NSDV].[3]  Beyond second degree robbery, "[a]lmost 40% of three strikes offenders sentenced are African American, while only 3.9% of the state's population is African American.  The next highest disparity is for American Indians, who are represented among three strikers at a rate more than two and a half times greater than the general population." COLUMBIA LEGAL SERVS., WASHINGTON'S THREE STRIKES LAW: PUBLIC SAFETY AND COST IMPLICATIONS OF LIFE WITHOUT PAROLE 7-8 (Mar. 2019), https://columbialegal.org/wp-content/uploads/2019/03/CLS-Report_Washingtons-Three-Strikes-Law.pdf [http://perma.cc/B2KX-2WZP].

I felt compelled to state in *Moretti* what is obvious, and I will say it again, "We should not be satisfied with the status quo; permanent incarceration has

---

[3] Hr'g on ESSB 5288 Before the H. Pub. Safety Comm., 66th Leg., Reg. Sess. (Wash. Mar. 26, 2019), at 25 min., 6 sec. to 25 min., 25 sec., *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org (Test. of Sen. Jeannie Darneille).  Thirty of the 62 would have served less than a five-year sentence for the crime, if second degree robbery was not a strike offense.  *Id*. at 25 min., 56 sec. to 26 min., 15 sec.  Among other important considerations, amici remind us that many people serving life without the possibility of parole sentences under the Three Strikes Law are frequently caught in a revolving door by institutions purporting to protect them, resulting in trauma and institutionalization.  *See* Amicus Br. of King County Dep't of Pub. Def. at 10-11.

*State v. Jenks (Alan D.)*, No. 98496-4 (Yu, J., concurring)

neither reduced crime nor increased confidence in our criminal justice system."

*Moretti*, 193 Wn.2d at 840 (2019) (Yu, J., concurring).  Acknowledging the

harshness, the amendment closed a loophole in the law allowing grossly

disproportionate sentences for crimes lacking the harm inherent in other strike

offenses.  *See* FINAL B. REP. ON ENGROSSED SUBSTITUTE S.B. 5288, 66th Leg.,

Reg. Sess. (Wash. 2019) (highlighting that while second degree robbery is no

longer a strike offense, first degree robbery and second degree assault remain strike

offenses); *see also* Jennifer Cox Shapiro, Comment, *Life in Prison for Stealing*

*$48?: Rethinking Second-Degree Robbery as a Strike Offense in Washington State*,

34 SEATTLE U. L. REV. 935, 954 (2011).[4]  But the end result of not applying it to all

who were similarly convicted and sentenced under the Three Strikes Law fell short

of achieving justice.

　　This case allows the court to reconsider its precedent upholding the

constitutionality of counting second degree robbery as a strike under the Three

Strikes Law.  *Compare State v. Witherspoon*, 180 Wn.2d 875, 891, 329 P.3d 888

---

[4] "'Robbery' is defined as the unlawful taking of personal property from the person of another or in [their] presence, against [their] will, by the use or threatened use of force, violence, or fear of injury to any person or property." *State v. Berg*, 181 Wn.2d 857, 863, 337 P.3d 310 (2014) (citing RCW 9A.56.190).  It remains a strike offense to commit first degree robbery, a class A felony, by committing robbery while being armed with a deadly weapon or displaying what appears to be a deadly weapon, by inflicting bodily injury, or by committing robbery against a financial institution.  RCW 9A.56.200; RCW 9.94A.030(32)(a).  Similarly, it remains a strike offense to commit second degree assault (a class B felony like second degree robbery).  RCW 9A.36.021; RCW 9.94A.030(32)(b).

*State v. Jenks (Alan D.)*, No. 98496-4 (Yu, J., concurring)

(2014), *with* Br. of Amici Curiae Fred T. Korematsu Ctr. for Law &Equality et al. at 12-17 (applying *State v. Fain*, 94 Wn.2d 387, 617 P.2d 720 (1980)). "[W]e can reconsider our precedent not only when it has been shown to be incorrect and harmful but also when the legal underpinnings of our precedent have changed or disappeared altogether." *W.G. Clark Constr. Co. v. Pac. Nw. Reg'l Council of Carpenters*, 180 Wn.2d 54, 66, 322 P.3d 1207 (2014).

Our elimination of the death penalty based on consideration of racial disproportionality should compel us to ask the same questions here. The "gradation of sentences that once existed before *Gregory* has now been condensed," and "a serious reexamination of our mandatory sentencing practices is required to ensure a just and proportionate sentencing scheme." *Moretti*, 193 Wn.2d at 835 (Yu, J., concurring). We ought to wrestle with whether a mandatory life sentence without the possibility of release comports with contemporary standards of decency; we need to ask and answer what constitutes cruel punishment under our state constitution. CONST. art. I, § 14.

Jenks' punishment is grossly disproportionate to the sentence he would receive today for the same convictions. Suppl. Br. of Pet'r at 12; Br. of Amici Curiae Fred T. Korematsu Ctr. for Law & Equality et al. at 13 (citing *Fain*, 94 Wn.2d at 396). And nearly half the individuals serving *a life sentence* would have served *less than five years*. Hr'g on ESSB 5288 Before the H. Pub. Safety Comm.,

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Jenks (Alan D.)*, No. 98496-4 (Yu, J., concurring)

66th Leg., Reg. Sess. (Wash. Mar. 26, 2019), at 25 min., 56 sec. to 26 min., 15 sec., *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org (Test. of Sen. Jeannie Darneille). "To assign one sentence for such a wide range of offenses is to disregard our notions of fairness and justice." *Moretti*, 193 Wn.2d at 838 (Yu, J., concurring).

Limited review allows the court to affirm the harsh outcome the legislature commands. Nevertheless, the court should have addressed this constitutional issue in order to serve the ends of justice. I respectfully concur.

_____
Yu, J.

_____
Montoya-Lewis, J.

7

*State v. Jenks (Alan Dale)*

No. 98496-4

MADSEN, J. (dissenting)—The majority concludes that Engrossed Substitute Senate Bill 5288 (ESSB 5288), a legislative amendment removing second degree robbery as a "strike" from the Persistent Offender Accountability Act of the Sentencing Reform Act of 1981 (POAA), ch. 9.94A RCW, applies prospectively. Majority at 2. Such an outcome, according to the majority, is required by our rules of statutory interpretation. *Id*. at 5-6. There are many interpretive rules designed to assist courts including the rule that directs us to construe statutes to avoid constitutional violations. *Utter ex rel. State v. Bldg. Indus. Ass'n of Wash.*, 182 Wn.2d 398, 434, 341 P.3d 953 (2015). The majority, however, does not employ this rule and thereby creates an unconstitutional outcome. For Alan Jenks, who was convicted of second degree robbery as a third "strike" before ESSB 5288 came into effect, today's decision means he will spend the rest of his life in prison without the possibility of release. But, for those convicted of the same crime after ESSB 5288's effective date, such a draconian sentence cannot be imposed. In my view, removing robbery two as a strike offense that is nonetheless applicable to offenders who predate the change is a cruel punishment under article I, section 14 of the Washington

No. 98496-4
Madsen, J., dissenting

State Constitution.[1]  We must, therefore, construe ESSB 5288 to avoid this constitutional

violation and hold the amendment applies retroactively.  I respectfully dissent.

Discussion

ESSB 5288 was enacted in 2019.  LAWS OF 2019, ch. 187, § 1.  Lawmakers did

not specify when or to whom ESSB 5288 would apply.  This silence triggers our rules of

statutory construction which, without more, set the default effective date at 90 days

following the end of the legislative session.  *See generally id.*; *Cameron v. Atl. Richfield

Co.*, 8 Wn. App. 2d 795, 806, 442 P.3d 31 (2019) ("[A]n act takes effect 90 days after the

legislative session in which the legislature that enacted it adjourns unless the legislature

specifies a different effective date.").  Because the legislature was silent as to the affected

individuals, the majority looks to RCW 9.94A.345 and RCW 10.01.040, which in other

circumstances would be proper.  But here, the majority's conclusion that the legislature

intended only a prospective application of the new law results in cruel punishment.  *See*

WASH. CONST. art. I, § 14.  I cannot agree that the legislature intended this result.[2]

The Eighth Amendment to the United States Constitution prohibits cruel and

unusual punishment.  Article I, section 14 of the Washington State Constitution bars cruel

punishment.  This court has held that our state constitution is more protective than its

federal counterpart in this context.  *State v. Witherspoon*, 180 Wn.2d 875, 887, 329 P.3d

---

[1] This court granted the motion to strike any argument related to article I, section 14.  The majority utilizes rules of statutory construction to resolve the case, and one such rule is that of constitutional avoidance.  *Utter*, 182 Wn.2d at 434.  Therefore, I consider this constitutional provision and related case law but do not rely on arguments stricken by the court.
[2] The role of the court in statutory interpretation is to give effect to the legislature's intent.  *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010).

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 98496-4
Madsen, J., dissenting

888 (2014); *State v. Fain*, 94 Wn.2d 387, 392-93, 617 P.2d 720 (1980). *Fain* provides

four factors for analyzing whether a punishment is cruel under article I, section 14: (1)

the nature of the offense, (2) the legislative purpose behind the statute, (3) the punishment

the defendant would have received in other jurisdictions, and (4) the punishment meted

out for other offenses in the same jurisdiction. 94 Wn.2d at 397.

First, we consider the nature of Jenks' offense. Jenks was found guilty of first

degree robbery that occurred in 2014. He had two prior strike convictions, one for

second degree robbery in 2004 and another for first degree robbery in 2011. The trial

court sentenced Jenks as a persistent offender based in part on his prior robbery two

conviction under former RCW 9.94A.030(32)(o) (2012). Unlike first degree robbery,

robbery in the second degree generally involves no weapon, physical injury, or financial

institutions. RCW 9A.56.200 (listing the elements of first degree robbery); RCW

9A.56.210 (second degree robbery is all other robberies that are not first degree

robberies). Robbery two is a class B felony and the nature of the offense may vary

greatly depending on the circumstances of the crime. *Witherspoon*, 180 Wn.2d at 905

(Gordon McCloud, J., concurring and dissenting) (noting that a person can commit

second degree robbery by various means such as brutal assault or by an implied threat).

Though Jenks' final strike was for first degree robbery, his sentence of life imprisonment

was sealed by the previous second degree robbery conviction. The legislature's decision

to remove that category of crime from the list of most serious offenses indicates a

downgrade in culpability.

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 98496-4
Madsen, J., dissenting

The second *Fain* factor considers the legislative purpose behind the challenged statute. The POAA was intended to deter criminals who commit three "most serious offenses" and to segregate those criminals from society. *Witherspoon*, 180 Wn.2d at 888 (quoting *State v. Rivers*, 129 Wn.2d 697, 713, 921 P.2d 495 (1996)). The three strikes law was based on the idea that repeat offenders constitute a small component of the offender population. *Id*. at 903 (citing Jennifer Cox Shapiro, Comment, *Life in Prison for Stealing $48?: Rethinking Second-Degree Robbery as a Strike Offense in Washington State*, 34 SEATTLE U. L. REV. 935, 940 (2011)). In 2019, Washington lawmakers elected to remove robbery two from the POAA's most serious offense list, indicating that it no longer advanced the purpose of the statute. *See* LAWS OF 2019, ch. 187, § 1. That is, inclusion of second degree robbery did not punish the most violent criminals because the crime is not a class A felony or a serious violent felony offense. Hr'g on ESSB 5288 Before the H. Pub. Safety Comm., 66th Leg., Reg. Sess. (Wash. Mar. 26, 2019), at 22 min., 50 sec., *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org (testimony of ESSB 5288's prime sponsor, Senator Jeannie Darneille).

The third *Fain* factor is the punishment that the defendant would have received in other jurisdictions. This court has noted that a conviction for second degree robbery as a third strike offense triggers mandatory life sentences in three states while the same conviction in the "vast majority" of jurisdictions results in less than a life sentence: typically 10 years or less. *Witherspoon*, 180 Wn.2d at 888. Washington now joins the

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

majority of states in refusing to impose life sentences for offenders committing robbery in the second degree—an admittedly serious offense, but unlike the violent crimes for which the POAA was intended to deter. *E.g.*, Hr'g on ESSB 5288, *supra*; RCW 9.94A.030(46) (listing serious violent offenses such as first degree murder, first degree assault, and first degree rape).

The fourth *Fain* factor looks to the punishment in Washington for other offenses. We noted in *Witherspoon* that a life sentence imposed on a habitual offender for a robbery conviction was not cruel and unusual punishment under the Eighth Amendment. 180 Wn.2d at 888 (citing *Rivers*, 129 Wn.2d at 714). But article I, section 14 is more protective than the federal constitution in this context. *Fain*, 94 Wn.2d at 392-93. Outside of the POAA, only aggravated first degree murder, which is a level 16 seriousness crime, results in a mandatory sentence of life without parole. RCW 9.94A.510, .515. Second degree robbery, on the other hand, is a level 4 seriousness offense and the maximum sentence for a class B felony is 10 years and/or a fine of $20,000. RCW 9.94A.515; RCW 9A.20.021(1)(b). Second degree robbery is dissimilar from other class B felony strike offenses. As Senator Darneille stated in her testimony in support of ESSB 5288, robbery two is typically a "convenience store" crime and does not result in bodily injury, unlike other class B offenses such as manslaughter in the second degree. RCW 9A.32.070; Hr'g on ESSB 5288, *supra*, at 32 min., 40 sec. And, in the non-POAA context, courts may impose sentences below the standard range provided mitigating circumstances are established. RCW 9.94A.535.

No. 98496-4
Madsen, J., dissenting

The *Fain* factors demonstrate that a sentence of life without release for second degree robbery constitutes cruel punishment under our state constitution. WASH. CONST. art. I, § 14. This court reviewed a similar challenge in *Witherspoon* and arrived at the opposite conclusion—that a life sentence for second degree robbery is not cruel punishment. 180 Wn.2d at 887-89. However, *Witherspoon* is inapposite here for the critical fact that the legislature has removed second degree robbery as a most serious offense under the POAA. This decision necessarily alters the substance of the *Fain* factors, as described above.

Because a life sentence for second degree robbery violates the Washington State Constitution's bar against cruel punishment, I cannot join the majority's interpretation of ESSB 5288 as a prospective-only amendment. The majority relies on RCW 9.94A.345[3] and RCW 10.01.040,[4] which require criminal sentences to adhere to the law in effect when an offense was committed. But the legislature is always free, within the limitation of the constitution's ex post facto protections, to provide for retroactive relief by amending criminal sentencing statutes. Instead of mechanically applying our rules of

---

[3] RCW 9.94A.345 states, "Any sentence imposed under this chapter [(the Sentencing Reform Act)] shall be determined in accordance with the law in effect when the current offense was committed." The POAA is part of the Sentencing Reform Act. RCW 9.94A.570; *see also* ch. 9.94A RCW (Sentencing Reform Act).

[4] RCW 10.01.040 states, in relevant part, "Whenever any criminal or penal statute shall be amended or repealed, all offenses committed or penalties or forfeitures incurred while it was in force shall be punished or enforced as if it were in force, notwithstanding such amendment or repeal, unless a contrary intention is expressly declared in the amendatory or repealing act, and every such amendatory or repealing statute shall be so construed as to save all criminal and penal proceedings, and proceedings to recover forfeitures, pending at the time of its enactment, unless a contrary intention is expressly declared therein."

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

statutory interpretation to reach an unconstitutional result, the *constitution* should guide our statutory reasoning to avoid constitutional doubt. *See Utter*, 182 Wn.2d at 434; *see also State v. Santiago*, 318 Conn. 1, 85-86, 122 A.3d 1 (2015) (holding that the death penalty no longer comported with contemporary standards of decency and violated the state constitutional ban on excessive and disproportion punishment and its prospective abolition applied to capital sentences already imposed). This principle of constitutional avoidance mandates that we choose an interpretation that avoids running afoul of article I, section 14. *See Utter*, 182 Wn.2d at 434-35. Thus, I would hold that ESSB 5288 applies retroactively.

I further disagree with the majority because its holding conflicts with the rule that a newly enacted statute generally applies to cases pending on direct appeal and not yet final. *State v. Jefferson*, 192 Wn.2d 225, 246, 429 P.3d 467 (2018) (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 275, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994); *State v. Pillatos*, 159 Wn.2d 459, 470, 150 P.3d 1130 (2007); *State v. Blank*, 131 Wn.2d 230, 248, 930 P.2d 1213 (1997)). An amendment, like any other statute, applies prospectively unless the legislature intends, or the constitution requires, retroactive application. *Howell v. Spokane & Inland Empire Blood Bank*, 114 Wn.2d 42, 47, 785 P.2d 815 (1990). Prospective application of an amendment includes its application to cases pending on appeal. *See Jefferson*, 192 Wn.2d at 246. Jenks' case was pending in the Court of Appeals when the legislature enacted ESSB 5288. Thus, his case was not final. But for the majority's application of RCW 9.94A.345 and RCW 10.01.040, Jenks and similarly

No. 98496-4
Madsen, J., dissenting

situated individuals (those with pending appeals) would receive the benefit of ESSB 5288

and avoid lifetime imprisonment based on a robbery two conviction.  I would hold that as

a matter of statutory interpretation, individuals such as Jenks should receive the benefit of

ESSB 5288 when their cases are not yet final.[5]

Conclusion

The legislature's decision to remove second degree robbery as a strike offense

under the POAA carries significant consequences: pursuant to the *Fain* factors, life

imprisonment without release for a robbery two conviction constitutes cruel punishment

under our state constitution.  WASH. CONST. art. I, § 14.  Applying ESSB 5288

prospectively based on statutes requiring sentences in accordance with the effective law

at the time an offense was committed violates our constitution's bar against cruel

punishment.  But this constitutional violation is easily avoided by construing ESSB 5288,

which is silent as to its effective date, to apply to offenders whose appeals are pending

when the amendment was enacted.  *See Jefferson*, 192 Wn.2d at 246.  Because the

majority's conclusion will result in an unconstitutional outcome, I respectfully dissent.

---

[5] To ensure constitutionality, ESSB 5288 must be construed as retroactively applicable.  In the context of a personal restraint petition, Jenks would necessarily obtain relief from a life sentence under RCW 10.73.100.  Subsection (6) provides, in relevant part, that there has been a significant change in the law, whether substantive or procedural, that is material to the sentence and *a court*, in interpreting a change in the law that lacks express legislative intent concerning retroactive application, determines sufficient reasons exist to require retroactive application of the changed legal standard.  RCW 10.73.100(6).  Other areas of law contemplate that, at times, timeliness and finality must give way to granting the benefit of a changed legal standard.

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 98496-4

Madsen, J., dissenting

_____
Madsen, J.